[No. 12808. Department One. July 11, 1916.]

MICHAEL SCHUSTER, *Respondent*, v. JAMES SUTHERLAND, *Appellant*.[1]

PHYSICIANS AND SURGEONS — CONTRACT FOR SERVICES — BREACH— QUESTION FOR JURY. The making of a contract for a surgical operation and the failure to perform it, are questions for the jury, where, though conflicting, there was evidence to the effect that defendant agreed to remove all gallstones in the plaintiff's body, that he failed to remove one which, when removed nine weeks later, was of such size that it could not have formed within that time, and which was found within the field of exploration under the contract as admitted by him.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. Where, in an action for damages for breach of contract to perform a surgical operation, the court at defendant's request gave an instruction that the plaintiff could not recover unless the jury found by a preponderance of the evidence that the specific contract alleged was entered into and breached, error cannot be assigned on the failure of the court to instruct in terms on the theory of a contract as testified to by defendant, the instruction given being the more favorable of the two.

WITNESSES—IMPEACHMENT — CONTRADICTORY STATEMENTS. In an action for damages for breach of contract to perform a surgical operation for the removal of gallstones, in which a physician testified for plaintiff to having subsequently removed a gallstone which was soft, evidence by other witnesses for plaintiff that the stone so removed, shown to them by the witness, was hard, is not inadmissible as tending to impeach the plaintiff's own witness; since merely contradictory statements by witnesses are not inadmissible as impeaching in character.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered October 14, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Graves, Kizer & Graves*, for appellant.

*Dwight S. Anderson, Charles A. Aten*, and *E. B. Quackenbush*, for respondent.

FULLERTON, J.—This is an action to recover damages for a breach of a contract to perform surgical services.

[1]Reported in 158 Pac. 730.

In the complaint it is alleged, in substance, that, on December 4, 1912, the respondent, Michael Schuster, and the appellant, a physician and surgeon, entered into a verbal contract whereby the appellant agreed to perform a surgical operation upon the respondent, and contracted, warranted and promised to remove all gallstones then in the body of the respondent, to cure him of the ailments from which he was then suffering, and to remove from his abdomen all causes of disease of whatsoever kind or nature possible to be removed by means of such a surgical operation; that the operation was performed the next day; that appellant failed to remove all or any gallstones from respondent's body by the operation, though a certain gallstone was present; and that respondent was compelled to employ another surgeon, who performed an operation on him January 30, 1913, and who removed a gallstone from his abdomen which had not been found by the appellant. The appellant, in his answer, admitted that he was employed to perform a surgical operation upon respondent, and did perform such operation upon him, but denied generally the other allegations of the complaint.

There are certain facts in the record upon which there is no serious dispute. The respondent had been ill for about two years, and several physicians whom he had consulted had diagnosed his trouble as gallstones. In the early part of December, 1912, he consulted with the appellant, and finally entered into a contract with him for the performance of an operation. The operation was performed on December 5, 1912, in which the doctor removed the appendix. The respondent did not improve after the operation, his symptoms remaining the same, if not more pronounced. On February 7, 1913, he was operated upon by a Dr. Welty, who found and removed a calculus from the duct known as the ampulla of Vater. After this operation the respondent improved immediately, and progressed to a final recovery without a recurrence of his previous symptoms.

Concerning the contract of employment, the respondent testified that the doctor diagnosed his trouble as a diseased appendix, that he insisted that he had gallstones, and that the doctor admitted that that trouble might also be present, and agreed to remove in one operation all causes of disease, guaranteeing to turn him out a new man. Testifying to the terms of the contract he said:

"He said, 'It is possible there might be gallstones there.' I said, 'Are you sure, if you do the operation on me, that you will remove the gallstones?' He said, 'Yes, I sure will.' He said, 'It is my duty as a doctor that whenever I get into a person's inside, to remove all causes of disease, no matter what nature they may be, and it is no use your suffering here the way you are, if you have your operation as you ought to; I will remove the gallstones and I will remove the appendix, and whatever may be wrong, I will remove it.' . . . I said, 'Now, doctor, are you sure you will remove the gallstone?' 'Yes,' he said, 'I will remove the gallstone, the appendix, and, as I told you, furthermore, I will remove all causes of your disease, and I will certainly guarantee to turn you out a new man within two or three weeks."

He further testified that, on the next morning just prior to the operation, this conversation occurred:

"I said, 'Are you sure that you will do as you told me you would.' I said, 'I know I have gallstones; I know that is my trouble.' He said, 'Yes, I will remove them with the appendix; I will remove all causes, as I told you before.'"

The wife of the respondent gave the following version of the agreement:

"Well, I will do this way; I will take out the appendicitis, and at the same time I will remove the gallstones, if gallstones is there. I will examine the gall bladder, and if there is any gallstones there I will remove them, and all kind of disease are there I will remove it and I guarantee it."

The surgeon stated the agreement in the following language:

"I told him it was impossible for any man to say exactly what was the matter with him, that while that was my belief

that it was the appendix with adhesions, that there might be other things. And I said, 'The only way in the world to find out what is the matter with you is to make an exploratory incision and make an examination.' He asked me several questions about it, and I described it to him, and told him where it would be made. When I told him about taking out the appendix, he wanted to know if I could examine the gallbladder at the same time. I said, 'Yes, my incision will be made high, so that I cannot only take out the appendix, if it is diseased, but I can examine the gallbladder as well.' . . . . 'I told him that I would make the incision so that I could remove the appendix and examine the gallbladder. I did not even tell him that I would examine the gall ducts. I told him I would examine the gallbladder. That is the question he asked me, if I would examine the gallbladder, and I told him I would. I did not even tell him I would examine the ducts."

The surgeon also testified that he diagnosed the respondent's ailment as appendicitis, with a possibility of gallstones; that he undertook to, and did, make the incision for the appendicitis operation in such a manner as to permit him to explore the gall bladder and the ducts leading therefrom; that he found the appendix in a diseased condition and removed it; and that he made an examination of the gall bladder and the gall ducts, but found neither gallstones nor any diseased condition of the parts examined. Concerning the ampulla of Vater, he was asked if his following of the gall ducts reached that place, and answered "I believe so." He further testified, and produced expert testimony in corroboration, that gallstones may form in a short period of time, and that it was possible for the stone found in the subsequent operation to have formed between the two operations. Expert testimony was also introduced to the effect that the stone removed could have formed in the liver or pancreas and could have reached the place in which it was found subsequent to the first operation by ducts not connected with the gall bladder, and thus not discoverable or removable by an

operation such as the appellant performed or agreed to perform.

In rebuttal, the respondent introduced expert testimony tending to show that the appendix removed by the appellant was not in a diseased condition when removed, and never had been diseased; that the incision made in the body of the respondent was not of sufficient length to enable him to make the exploratory examination of the gall bladder and ducts which he testified he had made; that a stone of the size removed from the body could not have passed through the ducts leading from the liver or pancreas to the ampulla of Vater, and further that the gallstones, or stones of the character of the one removed, required much more time for their formation than the time elapsing between the two operations.

The appellant's first contention is that the court erred in refusing to grant his motion for a directed verdict. He argues that his contract, giving to the respondent's version of it the most favorable construction, was to remove any gallstones which might be in the gall bladder and the ducts leading therefrom, and that the evidence is positive that he examined these without finding any such stone; that the fact that a stone was found in the duct below the bladder nine weeks later than his examination does not prove that it was there when he made the examination, for there was nothing to show where it came from, whether from the gall bladder, the liver, or the pancreas, and nothing to show that it could not have come from some possibly inaccessible place within that time. And further (to quote from his brief):

"The court will understand that we do not claim that no case can be made by circumstantial and opinion evidence which will withstand direct evidence. That we do not conceive to be the law. If a case is made out by evidence which closes every gap, so that inference and speculation are not necessary to make a complete case, it matters not whether the evidence is circumstantial or direct; it makes a case for the jury's consideration. But in the case at bar there was a gap in plaintiff's evidence which could only be closed by sur-

mise. The jury could only say that the stone did not come from the liver or pancreas on the theory that such stones so seldom formed in either organ that they could disregard the probability that this one did. Upon such theory only could they deduce the ultimate fact that they were required to find; that defendant did not examine the gall bladder and duct for stones when he operated. But when defendant's evidence showed that he did examine the gall bladder and ducts and found nothing, and this evidence remained undisputed, the balance of probabilities shifted. Defendant's unsuccessful search for stones in the gall bladder and ducts overcame any presumption that the one afterward found was then there which might otherwise have arisen because such stones usually form there, and established as the stronger probability that it was then in either the liver or pancreas."

But we think there was evidence from which the jury were warranted in finding that the contract was somewhat broader than this contention concedes it to be. As we read the record, there was evidence tending to show that the contract was to remove all gallstones in the respondent's body in whatsoever place situated, and all causes of disease, be the same what it may, and evidence to the effect that a gallstone of the size of the one removed in the second operation could not have formed in the body within the time elapsing between the two operations. If this were the contract, and the evidence concerning the time required for the formation of the stone be believed, clearly the question was for the jury, conceding that the appellant made an exploration of the gall bladder and the ducts leading therefrom.

If, however, the court can say, as matter of law, that rational beings would not enter into the contract contended for by the respondent, and that in law the contract was one to explore the gall ducts and the ducts leading therefrom and remove such as would be found, still we think the question whether it was actually performed was for the jury. Without again repeating the record, we think there was much evidence, of a circumstantial nature to be sure, which tended to show that the appellant did not perform the contract even

as he concedes it to be.   His own testimony, we think, gives
rise to a doubt whether he got as far as the ampulla of
Vater in his examination of the gall ducts, although he did
not question that this was within the field of exploration un-
der the contract as stated by himself.   The evidence was con-
tradictory, it is true, and its weight does not seem in every
instance to be with the conclusions of the jury, but the facts
being for them, we must abide their verdict.

The next contention is that the court did not, in its in-
structions, submit to the jury the appellant's theory of the
contract entered into between the parties.   The court charged
the jury, following a specific request of the appellant, that,
unless they found by a preponderance of the evidence that a
specific contract was entered into between the respondent and
the appellant by which the appellant agreed to remove from
the body of the respondent all gallstones in the body of the
respondent, and that he failed in the performance of the agree-
ment, then they must find for the appellant.   The court did
not, it is true, instruct in terms on the theory of a contract
as testified to by the appellant, but it would seem that the
instruction given was more favorable to the appellant than
would have been such an instruction.   The court could not
have given instructions on both theories without giving in-
consistent instructions, and since he chose the theory most
favorable to the appellant, the appellant is not in a position
to complain.   It will be remembered that the appellant did
not set forth in his pleadings any different contract from that
alleged by the respondent in his complaint.   On the contrary,
he contented himself with a general denial.   Under this gen-
eral denial, it was, of course, competent for him to show, in
order to defeat a recovery, not only that he did not make the
contract contended for by the respondent, but what the con-
tract entered into between them actually was.   But his evi-
dence did not necessarily change the issues.   It was still in-
cumbent on the respondent to recover on the contract al-
leged, and the court did its full duty when it stated this issue

fairly to the jury and instructed them that there could be no recovery unless the contract was proven as alleged.

The surgeon who performed the second operation was called as a witness by the respondent. Upon his direct examination, in answer to questions addressed to him by respondent's counsel, he testified that the stone removed by him from the respondent's body was soft, so much so that it partially disintegrated even before it was removed from the duct in which it was found; that it further crumbled when exposed to the air; that he wrapped it in gauze in order to preserve it, but that in spite of this it finally crumbled into dust. He testified further that he showed the stone at the hospital to one P. S. Walgamot on the day on which it was removed, and at some subsequent time showed it to one of the counsel for the respondent. Afterwards Walgamot was permitted to testify that the surgeon showed him a gallstone that was dark brown and hard, one that looked to him very much like a rock, or a piece of stone that was very hard. The respondent was also permitted to testify that he went to the surgeon's office with one of his counsel, and saw a gallstone there which the surgeon exhibited as the one taken from his body, and that the stone was then in two parts, each of which was perfectly hard. The appellant assigns the admission of the testimony of Walgamot and the respondent concerning the condition of the gallstone at the time they viewed it as error, and argues that the testimony was inadmissible on the part of the respondent because tending to impeach the testimony of his own witness. But we think the contention not tenable. A party may not, under any circumstances, impeach his own witness by showing that his reputation for truth and veracity is bad, and he may only, under certain particular circumstances, impeach him by showing that he has made contradictory statements concerning a fact testified to by him at another time and place. But no rule prevents a party from presenting all the competent testimony he has relating to a particular fact. If his witnesses disagree, it is so much the

worse for him, as he alone is the sufferer, but the evidence is not inadmissible because contradictory of that of a previous witness. If the rule were otherwise, a party would always be at the mercy of his first witness.

We find no error in the record, and the judgment will stand affirmed.

MOUNT, ELLIS, and CHADWICK, JJ., concur.