[No. 29991. Department Two. November 29, 1946.]

ARTHUR YEAGER *et al., Appellants,* v. FLOYD L. DUNNAVAN, *Respondent.*[1]

[1]Reported in 174 P. (2d) 755.

*Olive Scott Johnson* and *Everal Carson,* for appellants.

*McMullen & Snyder* and *Senn, Recken & Recken,* for respondent.

MALLERY, J.—This cause was tried to a jury. It comes to us on appeal from an order of involuntary nonsuit and dismissal, entered upon the defendant's challenge to the sufficiency of the evidence at the close of the plaintiffs' case.

A challenge to the sufficiency of the evidence, or motion for nonsuit, admits the truth of plaintiffs' evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant and in the light most favorable to the plaintiff. *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265.

So construed, the facts are these: Appellants, as parents of Barbara Jean Yeager, aged nine, brought this action to recover damages for her death which occurred on June 7, 1945, while she was under an anesthetic during an eye operation then being performed upon her by respondent, who is a licensed physician specializing in eye, ear, nose, and throat practice.

Respondent had prescribed a change of eyeglasses and eye exercises for the child, which in a year's time had improved her sight, but had failed to correct the deviated or crossed condition of her left eye. Respondent then advised appellants that the child's defect could be remedied only by a surgical operation. Mrs. Yeager, the child's mother, testified as follows:

"Q. Well, and did you ask him any questions about it? A. Yes, I asked him if it was a dangerous operation and he shrugged his shoulders and said none whatsoever. Q. And after that what did you do? A. I went home and talked it over with my husband. Q. And did your husband and you arrive at an agreement of what you were going to do? A. Well, we talked it over and we decided to have the operation. *Dr. Dunnavan had promised that for $200.00 he would correct Barbara's eye without danger to her health or sight.* Q. And did you agree to pay him the money if he would do that? A. Yes. Q. And after that were arrangements made for the operation? A. Yes." (Italics ours.)

Appellants took the child to the Vancouver Memorial hospital on June 6th. There she was given the usual pre-operative tests and was taken into the operating room at 10:30 the following morning. The anesthetic, ether, was administered by Miss Johnson, an anesthetist in the employ of the hospital. Respondent commenced the operation at 10:45. Nothing untoward occurred until approximately 12:10 p. m., when both the respondent and the nurse noticed that the child had become cyanotic, that is, had taken on a bluish discoloration indicating a stoppage of breathing. Respondent immediately stopped the operation procedure and passed to the other side of the drape to look at the child, who was not breathing. This was the first and only sign that anything abnormal was occurring. Efforts were immediately begun to resuscitate her. Other doctors were called in to assist, but all efforts were in vain.

An autopsy revealed that the death was caused by an allergy to ether of the thymus gland of the child. According to the evidence, there is no known test to ascertain such an allergy prior to the time that ether is administered.

The complaint alleged breach of the respondent's agreement to correct the child's eyesight without injury to her health or eyesight and without danger to her life, and further alleged negligence. Answer was general denial.

In their first assignment of error, appellants contend that the cause of action set forth in their complaint is one arising out of a breach of contract to correct Barbara Jean's eyesight. They therefore argue that the court below erred in

holding that Mrs. Yeager's testimony did not make a *prima facie* case.

 Whether or not the evidence adduced was sufficient to establish the contract contended for is not controlling, for we think that the gravamen of appellant's action is the alleged negligence of respondent in performing the operation rather than his breach of the alleged contract.

" 'Whether an action is in contract or in tort should be determined in the first place from the pleadings, and by an examination and consideration of the essential allegations of the complaint rather than the form adopted by the pleader, what the pleader calls it, the understanding of counsel or of the trial court, and the question must be determined by reference to the complaint as a whole, and not by particular words or allegations considered apart from the context. 1 C. J. S. 1100, Action, § 46. We think a good test to be used in determining whether a pleading sets up a case in contract or in tort may be stated as follows. When an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract, *but where there is a contract for services which places the parties in such a relation to each other that, in attempting to perform the promised service, a duty imposed by law as a result of the contractual relationship between the parties is violated through an act which incidentally prevents the performance of the contract, then the gravamen of the action is a breach of the legal duty, and not of the contract itself,* and in such case allegations of the latter are considered mere inducement, showing the relationship which furnishes the right of action for the tort, but not the basis of recovery for it, and in such cases the remedy is an action *ex delicto.*' " *Compton v. Evans,* 200 Wash. 125, 93 P. (2d) 341.

The *Compton* case was an action by a domestic servant against the estate of her employers for personal injuries incurred while traveling with them in their automobile from their summer home to their residence. Defendants were a marital community. The wife having died in the same accident in which plaintiff was injured, action was commenced against the husband. He died, and his executors and administrator *de bonis non* with will annexed of the

estate of his wife were substituted as parties defendant. The complaint set forth the contract of employment which provided *inter alia* that employers would furnish the plaintiff with board and room in whichever home they were then living *and would provide her with safe transportation between residences.* The complaint further alleged negligence in the employer's operation of their automobile which resulted in plaintiff's injury. Applying the rule set forth above, we held that plaintiff's action sounded in tort and that she could not recover against the estate, since the tort action did not survive.

A basic illustration of the rule, and one most often employed in cases dealing with this question, is that of injury befalling a passenger aboard a vehicle operated by a common carrier. In such cases, it is always held that the duty to carry safely is assumed by contract, but that the action for damages sounds in tort. This reasoning has been applied as to the duties, obligations, and liabilities of physicians and surgeons.

In *Harding v. Liberty Hospital Corp.,* 177 Cal. 520, 171 Pac. 98, plaintiff alleged a contract with defendant hospital corporation whereby defendant agreed to furnish medical and surgical treatment to plaintiff " 'when the same may be rendered necessary by an accidental injury or in sickness or disease.' " Plaintiff further alleged injuries to her knee, treatment thereof by defendant's chief surgeon, incompetency and negligence on his part, and resulting damage. The prayer was for twenty-five thousand dollars damages. The California supreme court there held:

"No distinction in principle can be discovered between this case and the case of *Basler v. Sacramento etc. Ry. Co.,* 166 Cal. 33, 134 Pac. 993. That was an action brought to recover damages for injuries suffered by one of the plaintiffs while a passenger on a street-car operated by the defendant in the city of Sacramento. There, as here, the plaintiffs pleaded the terms of the contract out of which the relation between the parties arose. In that case the relation was the contractual one of carrier and passenger. In this the relation was the contractual one of hospital and patient. In that case this court held that the pleading of the contract by

the plaintiffs was merely matter of inducement, out of the existence of which the definite legal duty of the defendant arose; and in that case, as in the instant one, the breach of that definite legal duty consisted in the alleged negligent acts and omissions of the agent of the defendant and consequent injury directly and solely caused thereby. The court there held that this was the gravamen of the action, citing numerous authorities in support of its view."

See, also, *Kershaw v. Tilbury*, 214 Cal. 679, 8 P. (2d) 109; *McDonald v. Camas Prairie R. Co.*, 180 Wash. 555, 38 P. (2d) 515; *Mueller v. Winston Bros. Co.*, 165 Wash. 130, 4 P. (2d) 854.

In *Schuster v. Sutherland*, 92 Wash. 135, 158 Pac. 730, plaintiff alleged a breach, by the defendant physician, of a contract "to remove in one operation all causes of disease, guaranteeing to turn him out a new man" and specifically alleging that the defendant promised to remove any gallstones present. In the course of the operation, defendant removed plaintiff's appendix, which was diseased, but failed to remove his gallstones. As a result, plaintiff suffered as much pain after the operation as he had before. In a subsequent operation, performed by another doctor, his gallstones were removed and the plaintiff completely recovered.

Appellants rely upon the *Schuster* case, in which plaintiff was allowed to recover, thereby establishing the proposition that, in this jurisdiction, where a physician contracts to perform successfully services, an action for breach of contract will lie in case of failure to do so.

In the *Schuster* case, the propriety of the remedy sounding in contract was not questioned, and we think a correct result was reached, for had an objection been raised, the plaintiff's remedy could have been grounded in tort as well. In such cases as the *Schuster* case and the case at bar, the contract is properly pleaded as inducement, or as a preliminary matter giving rise to a legal duty devolving upon the physician to utilize, with ordinary and reasonable care, that degree of skill and learning which is possessed by the average member of the profession in the community in which he practices, and which he himself is presumed to possess. *Fritz*

*v. Horsfall,* 24 Wn. (2d) 14, 163 P. (2d) 148. But it is the breach of that duty, rather than the breach of the contract which gives rise to the cause of action. The action is therefore *ex delicto,* rather than *ex contractu.*

The wrong alleged in the *Schuster* case was the failure to remove gallstones. Had the defendant contracted to do so and then, before commencing the operation, had repudiated his agreement and had refused to perform it, the gravamen of the plaintiff's action would then have been *ex contractu.* However, such was not the case. The defendant did undertake performance. Immediately, the legal duty of care devolved upon him. His failure, then, to remove the gallstones, was misfeasance in the form of a negligent omission to do what he should have done, it being reasonably necessary under the circumstances and under the terms of the contract. Thus, the gravamen of the plaintiff's cause of action sounded in tort, and the wrongful omission was negligence under the circumstances. Thus analyzed, the case is in harmony with our holding in the instant case that the gravamen of appellants' action sounds in tort.

Considering this as a tort action, the only evidence of negligence is the following testimony by Mrs. Yeager:

"Q. After the operation and after you were told of the death of Barbara Jean, did you talk to Dr. Dunnavan? A. After while, yes. We called him out. Q. What did you say to him at that time? A. I accused him of being careless, not giving her the proper examination. Q. Did he say anything in answer to your question? A. He says, 'You are right, Mrs. Yeager.' "

■ Error is assigned upon the trial court's refusal to submit the case to the jury upon this evidence. We said in *Fritz v. Horsfall,* 24 Wn. (2d) 14, 163 P. (2d) 148:

"(4) Before a physician or surgeon can be held liable for malpractice, he must have done something in the treatment of his patient which the recognized standard of medical practice in his community forbids in such cases, or he must have neglected to do something required by those standards. . . . (8) Negligence on the part of the physician or surgeon by reason of his departure from the popular standard of practice must be established by medical testimony."

It was not shown that there was any negligence which was the proximate cause of the unfortunate death. Indeed, the evidence shows affirmatively that the death resulted from an independent cause, that is, an allergy, which was unforeseeable.

The judgment is affirmed.

STEINERT, CONNELLY, and SCHWELLENBACH, JJ., concur.

SIMPSON, J., concurs in the result.