[No. 33524.  Department One.  January 26, 1956.]

ROBERT N. REVIER, *Respondent,* v. SHIRLEY R. REVIER, *Appellant.*[1]

[1]Reported in 292 P. (2d) 861.

*Henry Opendack* and *Arthur M. Hansen,* for appellant.

*Wm. E. Hennessey,* for respondent.

HAMLEY, C. J.—Defendant mother in this divorce action appeals from that part of the judgment which awards custody of the minor son to plaintiff father.

The parties were married on February 10, 1951. Appellant was then seventeen years old, and respondent was nineteen. The son, Robert W., was born August 23, 1952. The parties separated in April, 1954, appellant retaining custody of the child. Respondent began this action on June 15, 1954. Appellant cross-complained for a divorce. The trial was had on May 5 and 9, 1955. Judgment was entered on May 13, 1955, awarding respondent a divorce and custody of the child.

The trial court found that respondent, but not appellant, was a fit and proper person to have the care, custody, and control of the child. The finding as to appellant's unfitness was based upon the following specifications: Appellant's mother, with whom appellant and the child reside, and appellant have been guilty of adultery since the separation of the parties and the commencement of this action. Having denied the same, they have also committed perjury. Appellant dated and associated with other men and permitted

them to stay in her home until the morning hours. Appellant had, on four or five occasions, taken the child to a tavern operated by appellant's mother and another person. Appellant had, on frequent occasions, hugged and kissed her paramour while sitting at the tavern bar. The child called appellant by her first name, and called many of the men who came to the house "daddy." Appellant and her mother used profane language in the presence of the child. Appellant spent an excessive amount of time with male companions at night, which prevented her from giving proper care to the child.

Appellant argues that the evidence does not sustain these detailed findings as to misconduct.

The evidence tending to show adultery was circumstantial. Where this is the case, the evidence must show: (1) an adulterous disposition on the part of the defendant and the alleged paramour; (2) an opportunity to commit the act; and (3) circumstances tending to show guilt. *Barrinuevo v. Barrinuevo*, 47 Wn. (2d) 296, 287 P. (2d) 349.

Here, the evidence consisted, in the main, of testimony to the effect that appellant frequently and alone entertained, in her darkened home until the early hours of the morning, a man whom she had caressed and with whom she had imbibed in public. In our view, such evidence satisfies the test for a circumstantial civil case of adultery, as set out in *Barrinuevo, supra.*

There was substantial testimony in support of the court's detailed findings as to adultery and other acts of misconduct. It is true that the testimony on almost every point was in sharp conflict. It is also true that most of the witnesses were relatives or friends of one party or the other, and that much of the testimony favorable to respondent was based upon spying activities conducted night after night with the aid of binoculars. Under such circumstances, the ascertainment of the facts is, to a large degree, dependent upon the credibility of the witnesses. We are in no position to set aside the trial court's evaluation of credibility. See *Paulson v. Paulson,* 37 Wn. (2d) 555, 225 P. (2d) 206.

Four of the eleven witnesses called by respondent gave testimony tending to contradict the findings of fact as to misconduct. These witnesses were appellant, who was called as an adverse witness; Robert Goolie, whom the court found to be her paramour; Wayne McCloud, who testified that, since the divorce action was commenced, he went to a dance with appellant and her brother; and Charles Tortorelli, a partner of appellant's mother in the tavern business.

Appellant argues that respondent is bound by the testimony of these four witnesses called by respondent, notwithstanding that respondent's remaining witnesses gave testimony tending to support the findings of fact.

■ We do not agree. Appellant did not object to the introduction of such conflicting evidence, nor assign error upon the admission of such evidence. In any event, the conflicting evidence was admissible, and respondent was not bound by the contrary testimony of the four witnesses referred to above. The applicable rule is stated in *Allard v. Northwestern Contract Co.*, 64 Wash. 14, 116 Pac. 457, and *Schuster v. Sutherland*, 92 Wash. 135, 158 Pac. 730. In the latter case, we said:

"A party may not, under any circumstances, impeach his own witness by showing that his reputation for truth and veracity is bad, and he may only, under certain particular circumstances, impeach him by showing that he has made contradictory statements concerning a fact testified to by him at another time and place. But no rule prevents a party from presenting all the competent testimony he has relating to a particular fact. If his witnesses disagree, it is so much the worse for him, as he alone is the sufferer, but the evidence is not inadmissible because contradictory of that of a previous witness. If the rule were otherwise, a party would always be at the mercy of his first witness." (p. 142)

Appellant argues that certain of the detailed findings of fact do not support the general finding that appellant is unfit to have custody of the child. Specifically, it is contended that misconduct on the part of appellant's mother is of no importance, since appellant is not responsible for her

mother's actions, and can be ordered to disassociate herself from her mother. It is also argued that the child's visits to the tavern were only for short periods of time while appellant was visiting· with her mother; that appellant did not drink in the child's presence; and that no harm resulted from such visits.

These two items taken alone might not be sufficient to deprive the mother of custody of this small son. Courts are loath to deprive the mother of custody of her infant. *Freeland v. Freeland,* 92 Wash. 482, 159 Pac. 698. Taken together with the findings of more serious acts of misconduct, however, they tend to substantiate the general findings as to unfitness. A mother, on her own initiative, ought to surround her child with a wholesome, moral atmosphere. See *Warnecke v. Warnecke,* 28 Wn. (2d) 259, 182 P. (2d) 699. It was a violation of statute for the child to enter or remain on the tavern premises. RCW 66.44.310 [cf. Rem. Supp. 1943, § 7306-36A(1)].

All of the acts of misconduct took place after the separation of the parties and the commencement of this divorce action. This circumstance, however, is immaterial, where the question is one of custody of a minor child. How a parent conducts himself after a separation has occurred may be more revealing than conduct fettered by marital supervision. See *Paulson v. Paulson,* 37 Wn. (2d) 555, 225 P. (2d) 206, where post-separation conduct of the mother was considered in awarding custody to the father.

We conclude that the evidence does not clearly preponderate against the finding of fact that appellant was not, at the time of the trial, a fit and proper person to have the care, custody, and control of the child.

Appellant contends, finally, that the trial court erroneously declined to exercise its own discretion on the question of custody, considering itself bound by this court's decision in *Christian v. Christian,* 45 Wn. (2d) 387, 275 P. (2d) 422.

The *Christian* case involved adultery committed while the parties were living together. It was proved by admissions contained in letters and by testimony to the effect that

the disrobed paramour was found in a bedroom of the house. We also stated, in the *Christian* opinion, that the misconduct there proved was not the result of a *grande passion* or deep infatuation. It was, we said (using the language of *Braun v. Braun*, 31 Wn. (2d) 468, 197 P. (2d) 442), "just adultery reduced to the lowest common denominator."

Contending that, in the respects mentioned, the instant case differs from *Christian v. Christian*, appellant urges that the court should not have felt itself bound by that decision.

In his oral opinion, rendered at the close of the case, the trial judge stated that he had very little discretion in so far as the custody of the child was concerned; that this had all been determined by the supreme court in the *Christian* case, which decision was binding on the court. After pointing to the factual similarities and differences between the two cases, the trial judge quoted this portion of the *Christian* opinion as controlling here:

"We are constrained to hold that it would endanger the future welfare of the children involved to permit them to be reared by one who displays such a flagrant disregard of morality, the law, a solemn oath, and the sanctity of the home. It is not proper that such a person guide the spiritual, mental, moral, and physical development of these children. It will endanger their welfare." (p. 392)

Had the trial judge stated that, but for the *Christian* decision, he would have awarded custody to appellant, an erroneous surrender of the duty to exercise his own discretion would be indicated. The trial court, in awarding custody of childern in divorce actions, must consider many imponderable factors, peculiar to each individual case, bearing upon the future welfare of the children. *Norman v. Norman*, 27 Wn. (2d) 25, 29, 176 P. (2d) 349. The parties and this court are entitled to have the benefit of the trial court's sound evaluation of these factors in the light of the facts of the case before it.

But here, the trial judge did not state or imply that, except for the *Christian* decision, he would have awarded custody to appellant. While he stated that "this child

should really be with its mother," the trial judge was plainly speaking of what was desirable under normal conditions. He was not speaking of what was desirable in this case at the time the judgment was entered. This is shown by the trial court's expressed hope that the mother might be able to "straighten out her entangled life" and be able to show to another court at some future time that she could be given custody of the child "under circumstances that wouldn't endanger it."

That the trial court was personally disposed to award custody to appellant is also negatived by the findings of fact and conclusions of law. They represent the final and considered judgment of the trial court as to the facts and law in this case. They contain no hint that the trial court entertained the view that appellant should have custody, or that the court was not exercising its own discretion. The detailed findings of fact as to appellant's misconduct, summarized at an earlier point in this opinion, amply support the order entered.

The reference in the oral opinion to the *Christian* decision must, therefore, be regarded as merely the taking into account of a decisional rule that adultery is a weighty factor to be considered. The taking into account of such rule is not a surrender of duty to exercise discretion, but is an exercise of such duty.

Appellant, having been awarded attorney's fees in the sum of three hundred dollars for legal services rendered in the superior court, and two hundred fifty dollars for attorney's fees on appeal, requests us to award her an additional two hundred fifty dollars for attorney's fees on appeal. Respondent, on the other hand, requests us to award him five hundred dollars for attorney's fees on appeal. Both requests are denied.

Affirmed.

MALLERY, SCHWELLENBACH, FINLEY, and OTT, JJ., concur.

March 6, 1956. Petition for rehearing denied.