53 P.3d 60 (2002)
113 Wash.App. 199
Barbara HANSEN, individually and as personal representative of the Estate of Kurt Hansen; Brandon Hansen, an individual; and Ryan Hansen, an individual, Respondents,
v.
VIRGINIA MASON MEDICAL CENTER, a Washington nonprofit corporation; Lynne Taylor, M.D., Appellants.
No. 48156-8-I.
Court of Appeals of Washington, Division 1.
September 3, 2002.
*61 Christopher Holmes Anderson, Fain Sheldon Et Al, Mary H. Spillane, William Kastner & Gibbs, Seattle, WA, for Appellant.
David Elliot Breskin, Mark S. Nadler, Daniel Johnson, Philip Albert Talmadge, Talmadge & Stockmeyer, Tukwila, WA, for Respondent.
SCHINDLER, J.
In this case, in response to the spouse's concern that her husband's death was imminent, the doctor allegedly told the patient and his family that the patient was not going to die within the year. Regardless of how this assurance by the doctor is interpreted, it is not a legally enforceable promise under RCW 7.70.030(2). A cause of action under RCW 7.70.030(2) requires an express undertaking or promise to obtain a specific result or cure through a procedure or a course of treatment. We reverse the trial court's order granting summary judgment on liability and on remand direct entry of summary judgment in favor of Virginia Mason and Dr. Lynne Taylor.

FACTS
Kurt Hansen began experiencing symptoms of neurological dysfunction in the early 1990's. He met with Dr. Lynne Taylor, a neuro-oncologist at Virginia Mason Medical Center, for the first time in March 1993. Hansen had previously seen several physicians, including three neurologists, who had been unable to diagnose his condition.
Dr. Taylor saw Hansen three times between March and June of 1993. During the first visit, Dr. Taylor examined Hansen, reviewed his medical records and concluded it was "most likely" that Hansen suffered from multiple sclerosis.[1] Dr. Taylor recommended further diagnostic tests. Hansen returned again in June to request a letter for his insurance company. Dr. Taylor again performed an examination and concluded that although the "diagnosis is still that of a demyelinating disease" a repeat MRI scan would be helpful.[2] Hansen returned to review the results of the MRI, and Dr. Taylor recommended that he should be seen for a follow-up in six months.
Approximately two years later, in September 1995, Hansen returned to see Dr. Taylor. In the intervening period, Hansen had seen other neurologists who had been unable to reach a firm diagnosis of his illness. He saw Dr. Taylor periodically for six months between September 1995 and February 1996. In Dr. Taylor's notes from Hanson's visit in September 1995, she remarked that his condition had significantly deteriorated.[3] Dr. Taylor characterized his illness as "multiple sclerosis with a chronic progressive course".[4] In her notes following an appointment in early January 1996, Dr. Taylor remarked that she had not reached a positive diagnosis, stating: "A bazaar [sic] variety of demyelinating disease is still felt to be possible, though certainly quite atypical."[5] During this six-month period, Hansen underwent further diagnostic testing and Dr. Taylor referred Hansen for an evaluation for a brain biopsy.
During the appointment on January 24, 1996, Dr. Taylor and the Hansens had a conversation which is the subject of this appeal. Kurt Hansen, his spouse Barbara, and their minor son were present. Barbara Hansen testified in her deposition that she was "distraught" during the visit and that she *62 told Dr. Taylor that she was afraid her husband would die within the year.[6] Although she cannot remember the exact wording, she recalls that Dr. Taylor said "he was not terminal within the next year."[7]
Dr. Taylor's chart notes for that day refer to this conversation:
His wife had thought perhaps he was terminal within the next year because of the location of his problems, and I have assured her today this does not seem to be the case.[8]
Taylor later explained:
I assured them that he had no diagnosis of a terminal illness that would lead me to believe that he would die within the next 12 months.[9]
I merely indicated to them that I had not arrived at a diagnosis that would lead me to believe that Mr. Hansen had a condition that would be fatal within the next twelve months. I never used the word `assurance' or `promise' or `guarantee' during this conversation. When offering this opinion about his condition, I was not making any promise to the Hansens.[10]
In March of 1996, another physician performed a brain biopsy at Harborview Medical Center which revealed brainstem encephalitis, an inflammatory process.[11] From that point, until his death in November of 1996, Hansen was treated by Dr. Alex Spence, a University of Washington neuro-oncologist.
Hansen died on November 10, 1996. The cause of death was determined through an autopsy to be complications arising from pilocytic astrocytoma of the brainstem (a tumor of the brainstem) and a demyelinating viral infection of the brain.[12] None of Hansen's physicians had made this diagnosis.
Hansen's family members sued Virginia Mason and Dr. Taylor. They asserted claims of violation of the Health Care Provider Act, RCW 7.70, for missed diagnosis and breach of promise, negligent infliction of emotional distress, and violation of the Consumer Protection Act.[13]
Both parties moved for summary judgment on the breach of promise RCW 7.70.030(2) cause of action. The Hansens asked the court to rule, as a matter of law, that Dr. Taylor promised the Hansens that Kurt Hansen would not die within the year, that Dr. Taylor breached that promise and the hospital was liable under RCW 7.70.030(2).[14] Virginia Mason and Dr. Taylor (collectively "the hospital") moved for summary judgment to dismiss this cause of action. The trial court granted the Hansens' motion and denied the hospital's motion.
The hospital appealed to this court and we granted discretionary review.[15]

DISCUSSION
This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. Ellis v. City of Seattle, 142 Wash.2d 450, 458, 13 P.3d 1065 (2000). Summary judgment is proper if the court, viewing all facts and reasonable inferences in the light most favorable to the non-moving party, finds no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Ellis, 142 Wash.2d at 458, 13 P.3d 1065.
The Hansens' cause of action is based on RCW 7.70.030 which sets forth the grounds on which a plaintiff may recover for injuries resulting from health care. RCW 7.70.030 provides, in pertinent part:
No award shall be made in any action or arbitration for damages for injury occurring as the result of health care ... unless *63 the plaintiff establishes one or more of the following propositions:
. . .
(2) That a health care provider promised the patient or his representative that the injury suffered would not occur;
The hospital contends that the trial court erred by denying its motion for summary judgment because under either party's version of the facts, the statement made by Dr. Taylor does not constitute a promise within the meaning of RCW 7.70.030(2).
This is a case of first impression. There are no cases interpreting this statutory cause of action in the Health Care Provider Act enacted by the 1975-1976 Legislature. This court reviews the trial court's interpretation of a statute de novo. Rettkowski v. Dep't. of Ecology, 128 Wash.2d 508, 515, 910 P.2d 462 (1996).
The legislative history provides no indication that the Legislature intended to alter the scope of the pre-existing common law cause of action. The only legislative history which specifically relates to the breach of promise claim is that the Legislature considered and eventually rejected a proposal to require that a contract in the health care context be in writing.
The parties agree that the pre-statute common law cause of action was based on contract liability. The parties also agree that the statute codifies the cause of action that existed at common law. The Legislature is presumed to be aware of the common law, and a statute "will not be construed in derogation of the common law unless the legislature has clearly expressed that purpose." Staats v. Brown, 139 Wash.2d 757, 766, 991 P.2d 615 (2000). It is necessary therefore, to examine the nature of the common law cause of action as it existed prior to the enactment of the statute.
The first case to recognize a cause of action was Schuster v. Sutherland, 92 Wash. 135, 136, 158 P. 730 (1916). In this case the Court concluded that a physician entered into a verbal contract in which he "agreed to perform a surgical operation upon the respondent, and contracted, warranted, and promised to remove all gallstones then in the body of the respondent." The Court held that the physician was liable for breach of contract because he did not remove the patient's gallstones. The physician did not challenge the existence of a contract, but disputed the terms of the agreement.
In 1927, the Supreme Court decided Brooks v. Herd, 144 Wash. 173, 257 P. 238 (1927), involving a contract claim against a drugless healer. The Court confirmed that the law was "well-settled that a physician may contract specially to cure and is liable on his contract for failure." Brooks, 144 Wash. at 176, 257 P. 238. However, the nature and existence of the contract in Brooks was a question of fact.
In Yeager v. Dunnavan, 26 Wash.2d 559, 174 P.2d 755 (1946) the Court considered a case in which a physician allegedly promised to perform an eye operation which would correct a problem without damaging the patient's health or eyesight. When the patient died due to an allergic reaction to the anesthetic used in the operation, the parents sued for breach of contract. The Supreme Court affirmed the trial court's dismissal of the case reasoning that the "gravamen" of the case was tort rather than contract liability. Yeager, 26 Wash.2d at 562, 174 P.2d 755.
In Carney v. Lydon, 36 Wash.2d 878, 220 P.2d 894 (1950), the Court considered a case against another drugless healer who had undertaken to cure a patient's diabetes. On appeal, the Court concluded that the trial court had been correct in ruling, as a matter of law, that there was no breach of contract claim. The Court stated that "[t]he most that could be said on this subject is that [the practitioner] expressed the opinion that his method of treatment was designed to eliminate poison from the body and that should be followed by relief from the disease." Carney, 36 Wash.2d at 880, 224 P.2d 634.
Finally, in 1958, the Court decided Carpenter v. Moore, a case against a dentist who had agreed to make partial plates for the patient and "expressly guaranteed that all of the work would be done to [the plaintiff's] satisfaction." Carpenter v. Moore, 51 Wash.2d 795, 798, 322 P.2d 125 (1958). The Court held that the evidence was sufficient to *64 support a finding that the dentist had made and breached this contract, but because liability was contractual, the plaintiff could recover only the amount of consideration paid for the dentist's work.
In his opinion concurring in part and dissenting in part, Justice Finley noted that the majority in Carpenter did not mention Yeager in its opinion and that the case was either "in effect overruled" or its authority was "greatly diminished" by Carpenter because Carpenter confirmed that "special contracts by medical practitioners to cure or obtain specific results" are enforceable. Carpenter, 51 Wash.2d at 804, 322 P.2d 125 (Finley, J., concurring in part and dissenting in part).
These common law cases demonstrate the existence of a contract cause of action when medical practitioners expressly promise to obtain a specific result or cure though a course of treatment or a procedure. The viability of the contract theory was briefly called into question in Yeager, but subsequently reaffirmed in Carpenter. But the cause of action as it existed was narrow; the health care provider had to expressly and specially contract and guarantee particular results. As indicated by the Court in Carney, the existence of a contract will not be inferred where a practitioner merely offers an opinion regarding the effect of a course of treatment.[16]
Although the Hansens advance the dictionary definition of promise, we conclude that promise is a term of art in contract law. In contract law a promise is a "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." McCormick v. Lake Washington School Dist., 99 Wash.App. 107, 117, 992 P.2d 511 (1999) (quoting Restatement (Second) of Contracts sec. 2 (1981)). A promise has also been defined as "an undertaking, however expressed, that something shall happen, or that something shall not happen, in the future." Plumbing Shop, Inc. v. Pitts, 67 Wash.2d 514, 517, 408 P.2d 382 (1965). "A promise, in the sense of a commitment, must be distinguished from a description of a future event." 25 David K. DeWolf & Keller W. Allen, Washington Practice: Contract Law and Practice § 1.2 (1998).
The statement at issue in this case is related to a diagnosis or prognosis and is not related to a specific undertaking or a specific result or cure through a course of treatment or a procedure. None of the common law cases recognize a claim based on a promise regarding a diagnosis or prognosis. Even in Carney, in which the Court characterized the statement as an "opinion" and not a promise, the provider predicted the result of a particular course of treatment.
The hospital argues that the plaintiffs have not established a claim because they have offered no evidence of mutual assent, consideration, or forbearance.[17] For malpractice and informed consent claims under the Health Care Provider Act, the Legislature enacted additional sections which set forth the required elements of these claims. RCW 7.70.040; RCW 7.70.050. Presumably, if it had meant to include mutual assent or consideration, the Legislature would have similarly enacted an additional section containing these elements for a cause of action under RCW 7.70.030(2). Moreover, the pre-statute common law cases require only the existence of a promise and breach of that promise and not mutual assent, consideration or forbearance.
The Hansens contend that under any definition of promise, Dr. Taylor's alleged statement *65 is a promise. The Hansens rely on Dr. Taylor's use of the word "assure", in her chart notes. According to Dr. Taylor, when Barbara Hansen asked if her husband was terminal within the next year because of the location of his problems, she "assured" the family that "it did not seem to be the case".[18] Viewing the facts in the light most favorable to the Hansens and assuming Dr. Taylor assured the family that Kurt Hansen was not terminal within the next year, Dr. Taylor did not commit through this assurance or undertake a specific result or cure through a course of treatment or a procedure. An assurance is not an undertaking or commitment to obtain a specific result.
Because we presume that the Legislature intended to codify the common law, we conclude that an enforceable promise under RCW 7.70.030(2) must relate to the provision of specific medical services and the practitioner must expressly undertake or commit to obtain certain results or cure through a procedure or course of treatment. Here, under either version of the facts: whether Dr. Taylor told the family that Kurt Hansen would not die, or whether she assured them that it did not seem to be the case that he would die during the year, there is no evidence of a legally enforceable promise within the meaning of the statute. We reverse the trial court's order granting summary judgment and on remand direct entry of summary judgment in favor of Virginia Mason and Dr. Taylor.
COLEMAN, J., and ELLINGTON, J., concur.
NOTES
[1] CP 244.
[2] CP 249.
[3] CP 251.
[4] CP 252.
[5] CP 255.
[6] CP 31.
[7] CP 32-33.
[8] CP 257.
[9] CP 136.
[10] CP 323.
[11] CP 296-97.
[12] CP 306-308.
[13] CP 55-56.
[14] CP 233-36.
[15] The trial court stayed the litigation pending review.
[16] Most jurisdictions that have considered this issue have recognized the existence of a contract cause of action in the medical context. See Annotation, "Recovery against physician on basis of breach of contract to achieve particular result or cure," 43 A.L.R.3d 1221 § 2[a] (1972). Many jurisdictions have required clear proof of an express contract. 43 A.L.R.3d 1221 § 3. Some have required separate consideration apart from the regular fee paid for the practitioner's services. 43 A.L.R.3d 1221 § 4. And as in Yeager v. Dunnavan, 26 Wash.2d 559, 174 P.2d 755 (1946), some jurisdictions have concluded that asserted claims are more properly based on tort law. 43 A.L.R.3d 1221 § 2[a].
[17] Although hospital cites cases to show these are integral elements of common law contract claims, the hospital offers no authority supporting their argument that the Legislature intended to incorporate the requirement of mutual assent or consideration in the statute.
[18] CP 257.