# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

TERRENCE J. MULLAN, individually, and as Personal Representative of the Estate of DANA MULLAN, and for MATTHEW D. MULLAN, a minor, MICHAEL P. MULLAN, a minor, and CHRISTOPHER R. MULLAN, a minor,

Appellants,

v.

NORTH CASCADE CARDIOLOGY, PLLC, a Washington professional limited liability company; ANDREW and JANE DOE COLETTI, a marital community; and ST. JUDE MEDICAL, INC., a Minnesota corporation,

Respondents.

No. 68513-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: May 28, 2013

2013 MAY 28 AH 9: 24

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

SPEARMAN, A.C.J. — The Estate of Dana Mullan appeals the trial court's dismissal of its claims against Ms. Mullan's health care providers and the company that manufactured her pacemaker. Finding no questions of fact exist regarding proximate cause, we affirm the trial court.

## FACTS

Dana Mullan was diagnosed with a congenital heart condition in November 1989. In May 1994, Ms. Mullan underwent surgery and had a pacemaker implanted. The pacemaker was manufactured by St. Jude Medical, Inc. The user manual for the

pacemaker includes a discussion of battery longevity and recommended replacement time. The recommended replacement time for Ms. Mullan's pacemaker, which is shown on the device as "Elective Replacement Indicator" (ERI), occurs when the available battery voltage decreases from a maximum capacity of 2.8 volts to approximately 2.4 volts. By contrast the "end of life" (EOL) for the battery is defined as "the point in time when the device's pulse amplitude reduces to approximately 50 percent of the programmed value. EOL occurs when the available battery voltage has decreased to 2.2 volts." Clerk's Papers (CP) at 83.

On September 11, 2008, Ms. Mullan's doctor, Andrew Coletti of North Cascade Cardiology, examined Ms. Mullan after a registered nurse, Maria Healey, had "interrogated"[1] Mullan's pacemaker. Healey faxed the information she obtained from the interrogation to a St. Jude representative who opined that, based on the data provided by Healey, the pacemaker had approximately five to six months before it needed to be replaced. Healey relayed this information to Ms. Mullan.

About one month later, on October 12, 2008, Ms. Mullan died. An autopsy concluded that the cause of death was cardiac arrhythmia. Ms. Mullan's pacemaker was "explanted," i.e. removed, during the autopsy and testing done at that time put the battery voltage at 2.14V, or below the level indicating EOL. Thereafter, the pacemaker was sent to St. Jude for further testing. St. Jude determined the pacemaker was functioning normally and was not at the EOL stage. It explained that

---

[1] Interrogating a pacemaker refers to wirelessly measuring readings from the pacemaker.

because the initial testing was "performed outside of the body at a colder temperature, [it was] not reflective of actual device performance at body temperature." CP at 268. Ms. Mullan's Estate, asked St. Jude for the test results, which St. Jude provided on August 17, 2009.

In July 2011, about three years after Mullan died, the Estate filed a complaint for wrongful death against St. Jude, Coletti, Healey, and North Cascade Cardiology (the healthcare defendants). St. Jude and the health care defendants moved for summary judgment. The court granted both motions. The Estate appeals.

## DISCUSSION

Standard of Review. In general, the moving party on summary judgment bears the initial burden of showing the absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A moving defendant may meet the initial burden by "'showing'—that is, pointing out to the [trial] court—that there is an absence of evidence to support the nonmoving party's case." Young, 112 Wn.2d at 225 n.1, (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986)). Where a plaintiff's response to the motion "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" the trial court should grant the motion. Id. at 225 (quoting Celotex Corp., 477 U.S. at 322.

This court reviews summary judgments de novo, Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009), and must consider all facts submitted and

3

all reasonable inferences from the facts in the light most favorable to the nonmoving party. Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., 81 Wn.2d 528, 530, 503 P.2d 108 (1972) (citation omitted).

Dismissal of claim against St. Jude. The Estate alleged St. Jude was negligent in that it: "failed to exercise ordinary care in providing current, accurate, and timely technical assistance to Dana Mullan's health care providers with regard to the useful safe life of the battery" for her pacemaker. CP at 4. Negligence requires proof of four elements: (1) the existence of a duty to the person alleging negligence; (2) breach of that duty; (3) resulting injury; and (4) proximate cause between the breach and the injury. American Commerce Ins. Co. v. Ensley, 153 Wn. App. 31, 42, 220 P.3d 215 (2009) (citing Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 220, 802 P.2d 1360 (1991)). Among other things, St. Jude argues there is no evidence that any of its acts proximately caused Ms. Mullan's death. We agree.

St. Jude's motion to dismiss puts the Estate to its proof on the element of proximate cause. In support of the motion to dismiss, St. Jude provided expert testimony indicating that its pacemaker was functioning properly, and that the pacemaker was not the cause of Ms. Mullan's death:

5. The analysis conclusion was: "ERI caused by a normal depletion of the battery. The implant duration was approximately 14.4 years."

6. Such a conclusion does not mean that the battery improperly depleted, or that the battery was completely depleted and not working. Just the contrary. The foregoing analysis shows that the battery was continuing to deplete as it continued to work and age. The analysis also concluded that the battery

4

(and the entire device) was working normally and as it would be expected to work at this stage of its cycle.

7. The conclusions and findings regarding the battery longevity of this device are also well within the standards and parameters set forth in the User Manual for this device that has been approved by the FDA.

8. According to the User Manual, this device, depending on its programming and on the patient's physiology, could have lasted additional months properly providing therapy beyond the point of ERI prior to being fully depleted.

9. In short, the analysis of the device showed that the device continued to work and provide normal therapy even after its explant and return, and therefore, battery failure could not have been the cause of death.

CP at 44.

In response to summary judgment, the Estate presented two expert witness declarations: one from an electrical engineer, Louis Bilancia, and one from a cardiologist, Dr. Mark Seifert. However, neither of those expert declarations opined that St. Jude breached a duty of care, or that anything St. Jude did or failed to do was the cause of Ms. Mullan's death.[2]

Bilancia, relying in part on the interrogation performed immediately after explant, opined that Ms. Mullan's pacemaker battery had failed, but he was unable to establish a causal link between the battery failure and Ms. Mullan's death. He concluded that, "[s]everal reasonable hypotheses exist to explain why Ms. Mullan died that cannot be tested without access to the pacemaker itself." CP at 202. And while Bilancia disputed the reliability of St. Jude's post-explant testing of the

---

[2] In addition, at oral argument, counsel for the Estate conceded that in the absence of a continuance to allow time for examination of the pacemaker, it was "unable to provide evidence to establish causation."

pacemaker battery, he nowhere asserts that these purportedly unreliable tests proximately caused Ms. Mullan's death.

Nor does Seifert opine that any act or omission by St. Jude caused Ms. Mullan's death. Seifert stated that St. Jude provided Healey with an overly optimistic estimate of the pacemaker's battery life, but he attributes this to faulty information that Healey transmitted to St. Jude and upon which it relied. Like Bilancia, Seifert questioned the reliability of St. Jude's post-explant testing on the pacemaker battery, but he did not assert that either battery failure or the inaccurate information that St. Jude provided to Healey was the proximate cause of Ms. Mullan's death.

In short, St. Jude's motion to dismiss put the Estate to its proof on the issue of proximate cause. Once St. Jude pointed to an "absence of evidence" on this element, the burden shifted to the Estate to produce proof of it. Young, 112 Wn.2d at 225 n. 1. It failed to do so. Proximate cause "must be based on more than mere conjecture or speculation." Miller v. Likins, 109 Wn. App. 140, 145, 34 P.3d 835 (2001); see also Marshall v. Bally's Pacwest, Inc., 94 Wn. App. 372, 972 P.2d 475 (1999). The trial court did not err is granting St. Jude's motion for summary judgment.

Dismissal of claims against North Cascade Cardiology, Coletti, and Healey.

The Estate alleged the health care defendants were negligent in that they:

> failed to exercise ordinary care in interrogating Dana Mullan's pacemaker to determine the useful safe life of the battery energizing her pacemaker when they concluded on or about September 12, 2008, based on the information they had acquired on September 11, 2008, that the battery for Ms. Dana's pacemaker would last approximately another six (6) months from

6

the date it was interrogated on September 11, 2008 proximately resulting in Ms. Mullan's death on October 12, 2008.

CP at 3. When an injury occurs as a result of health care, the action for damages for that injury is governed exclusively by RCW 7.70 et. seq. Bransom v. State, 94 Wn. App. 964, 968-69, 974 P.2d 335 (1999). Under that statute, to recover damages for an injury occurring as a result of health care, a plaintiff must demonstrate one of three propositions, two of which are relevant in this case:

(1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;

(2) That a health care provider promised the patient or his or her representative that the injury suffered would not occur; . . .

RCW 7.70.030.

Regarding the Estate's breach of promise claim under RCW 7.70.030(2), the health care defendants argue it was properly dismissed under this court's decision in Hansen v. Virginia Mason Med. Ctr., 113 Wn. App. 199, 53 P.3d 60 (2002). We agree. In that case, in response to a spouse's concern that her husband's death was imminent, a doctor told the spouse that her husband was not going to die within the year. Hansen, 113 Wn. App. at 202. We held that the statute "requires an express undertaking or promise to obtain a specific result or cure through a procedure or a course of treatment." Id. at 200. As such, the doctor's assurance that the patient would not die within a year did not amount to a legally enforceable promise within the meaning of the statute. Id. at 208-09.

In this case, the evidence, when viewed in a light most favorable to the Estate, shows only that Healey told Ms. Mullan the results of the pacemaker battery

assessment: that it would last another five to six months. There is no evidence that Healey or the health care providers expressly assured or promised Mullan any specific result or outcome through a course of treatment, and as such the breach of promise claim was properly dismissed.

Moreover, the Estate was required to establish causation for both the breach of promise claim and the claim for breach of the standard of care. The health care providers make the same arguments advanced by St. Jude regarding causation: that the Estate provided no expert testimony supporting a causal link between any nursing malpractice and Ms. Mullan's death. They note that neither expert testified that Ms. Mullan's death was caused by the pacemaker's alleged failure. As is described above, Bilancia's declaration actually acknowledges that the Estate cannot link Ms. Mullan's death to pacemaker failure, and at oral argument, counsel conceded the Estate had no evidence of causation. In sum, the trial court did not err in dismissing the claims against the health care providers.

Continuance under CR 56(f). The Estate argues the trial court erred by declining to permit a continuance under CR 56(f) for the purpose of the Estate obtaining and examining the pacemaker itself. We disagree. A trial court's denial of a CR 56(f) motion for a continuance is reviewed for an abuse of discretion. See Clarke v. Office of the Attorney General, 133 Wn. App. 767, 777, 138 P.3d 144 (2006); Mossman v. Rowley, 154 Wn. App. 735, 742, 229 P.3d 812 (2009). "A court abuses its discretion when it bases its decision on unreasonable or untenable grounds."

Clarke, 133 Wn. App. at 777. Additionally, a trial court has the discretion to deny a continuance if "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact." Janda v. Brier Realty, 97 Wn. App. 45, 54, 984 P.2d 412 (1999) (quoting Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

Here, the Estate never moved to compel production of the pacemaker, even though it received St. Jude's testing in August 2009. Nor did the Estate move for a continuance in its responses to summary judgment. Instead, the Estate waited until the day of oral argument on the summary judgment motions in February 2012, thirty months after receiving St. Jude's results, to ask for a continuance to seek production of the pacemaker. The Estate has given no reason for the delay, nor does it state that it could have determined through an examination of the pacemaker more than three years after Ms. Mullan's death, that the pacemaker had stopped functioning, causing her death. Under these circumstances, we conclude the trial court did not abuse its discretion in denying the motion.

Affirmed.[3]

WE CONCUR:

_Spearman, A.C.J._

_Appelwick, J._

_Grosse, J._

---

[3] In light of our decision, we decline to address St. Jude's arguments regarding federal preemption and the learned intermediary doctrine.