[No. 10166–5–III.  Division Three.  May 8, 1990.]

SU THAO, *Appellant,* v. CONTROL DATA CORPORATION, ET AL, *Respondents.*

---

*Carl Sonderman,* for appellant.

*Stuart Allen, James E. Lobsenz,* and *Carney, Stephenson, Badley, Smith & Spellman,* for respondent Control Data Corp.

*Harvey Faurholt* and *Horton, Wilkins, Faurholt & O'Connor,* for respondent Buttrey Foods.

*Kenneth O. Eikenberry, Attorney General,* and *James Brusselback, Assistant,* amici curiae.

MUNSON, C.J.—Su Thao appeals the dismissal of his action for negligence in the issuing of a lottery ticket contending (1) a regulation limiting liability is inapplicable, and (2) the State could not immunize its agents against actions for negligent performance of ministerial duties. We affirm.

Mr. Thao asked his nephew to purchase 10 lottery tickets, using two play slips which he had prepared. The nephew made the purchases at Buttrey Foods, Inc. When the winning numbers were announced, Mr. Thao determined he had a winning combination on one of his play slips. When he examined his ticket, however, he discovered he had two sets of identical tickets and no ticket corresponding to the second play slip with the winning number. He went to Buttrey, where the sales clerk stated that "obviously she had mistakenly ran [*sic*] one play card through twice . . .".

Mr. Thao commenced this action, alleging he was damaged by Control Data Corporation's (CDC) and Buttrey's negligence. The action was dismissed for failure to state a claim upon which relief can be granted.

The Washington State Lottery operates a game called Lotto. WAC 315–32. Players may use a play slip to preselect numbers. WAC 315–32–010, –030.[1] The player selects six numbers for each play, each ticket contains two lines of six numbers each, each play slip contains spaces for five tickets, and a winning play is achieved when three or more

---

[1] The player has the option of letting the computer select numbers using a random number generator. WAC 315–32–030(2).

of the selected numbers on a single line of the ticket match numbers drawn by the lottery. WAC 315–32–030. A machine, TDM, reads the play slip and issues tickets with corresponding plays. WAC 315–32–030(2).

On the back of each play slip, following an explanation of how to play and the odds of winning, the following language is printed:

RULES AND REGULATIONS
. . . .
> *Be sure to verify that the selections on the ticket are the selections requested on the play slip before you leave the agent's premises.*

CDC owns and maintains the TDM machines and offers training in the use and operation of its machines. Buttrey operates a store where tickets are sold and apparently its employees had been instructed by CDC.

Mr. Thao contends WAC 315–30–050(4), the regulation limiting the remedy for a defective ticket, is inapplicable to this action because the action is for negligence; furthermore, he is not claiming the ticket was defective.

■ A lottery is contractual in nature. Historically, lotteries in this state have the elements of a chance, a consideration, and a prize. *State ex rel. Schillberg v. Safeway Stores, Inc.,* 75 Wn.2d 339, 450 P.2d 949 (1969) and cases cited therein. In *Seattle Times Co. v. Tielsch,* 80 Wn.2d 502, 507, 495 P.2d 1366 (1972), the court, quoting F. Williams, *Flexible Participation Lotteries* § 278, at 275 (1938), noted:

> It is designed to induce many contracts. The entire scheme is presented to the public as a general offer. The scheme prescribes the conditions of acceptance. These conditions require the acceptors to pay something or do something, or both.

Cases in other jurisdictions hold contract law is applicable to lotteries. *Coleman v. Bureau of State Lottery,* 77 Mich. App. 349, 258 N.W.2d 84 (1977) involved a mistake in the conduct of a lottery drawing. The court noted:

> In the instant case the [lottery] bureau made a public offer that the purchaser of a lottery ticket would have a chance of

winning a prize according to the advertised rules and procedures of the lottery. In purchasing her ticket Mrs. Coleman accepted that offer and agreed to the announced rules for determining prize winners.

*Coleman*, at 351. *Valente v. Rhode Island Lottery Comm'n*, 544 A.2d 586 (R.I. 1988) similarly held a lottery ticket was a contract, and the ticket holder was bound by the conditions printed on the back of the ticket.

By completing and submitting a play slip and paying the price of a lottery ticket, Mr. Thao and his nephew accepted the State's offer. They entered into a contractual relationship with the State through its agent Buttrey, thereby agreeing to the rules and regulations governing the lottery.

The essential allegations of the complaint, rather than the form adopted by the pleader, determine whether an action sounds in contract or tort. *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 218, 543 P.2d 338 (1975); *Yeager v. Dunnavan*, 26 Wn.2d 559, 562, 174 P.2d 755 (1946). "When an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract . . .". *Compton v. Evans*, 200 Wash. 125, 132, 93 P.2d 341 (1939) (quoting *McClure v. Johnson*, 50 Ariz. 76, 69 P.2d 573, 578 (1937)).

The purchaser of a lottery ticket agrees to comply with the rules promulgated by the Washington State Lottery Commission. WAC 315–06–070. Thus, the rules are included terms of the contract. *See Valente*, at 589. One such rule, WAC 315–32–030(2), provides in part:

> Method of play: The player will use play slips to make number selections. The TDM will read the play slip and issue ticket(s) with corresponding plays.

The issuing of a ticket with numbers corresponding to those selected by the player on the play slip is required by the rules or terms of the contract. The essence of Mr. Thao's complaint is that Buttrey breached the contract when the clerk inserted the same play slip twice rather than each play slip once. His cause of action is for breach of contract, not negligence.

WAC 315–30–050(4) limits a ticket retailer's liability:

> In the event a defective on–line ticket is purchased, the only responsibility or liability of the lottery or the on–line retailer shall be the replacement of the defective on–line ticket with another on–line ticket for a future drawing of the same game.

Mr. Thao contends this provision is inapplicable because he does not claim the ticket is defective.

No special definition of the term "defective" is provided in the rules. "Defective" means "having a defect or flaw; faulty; imperfect . . ."; "defect" means "a shortcoming, fault, or imperfection". *Random House Dictionary of the English Language* 522 (2d ed. 1987). The rules define an on–line ticket:

> A computer–generated ticket issued by an on–line retailer to a player as a receipt for the combination a player has selected. That ticket shall be the only acceptable evidence of the combination of digits, numbers, or symbols selected.

WAC 315–30–020(3). The italicized sentence on the back of Mr. Thao's play slip plainly notifies players of their duty to ensure that tickets issued to them accurately reflect the number combinations they select. A ticket which does not reflect the combination a player has selected is flawed or imperfect, and therefore defective. Mr. Thao's remedy is limited by WAC 315–30–050 to a replacement of the defective ticket.

Next, Mr. Thao contends the State cannot grant its agents immunity from suit for the negligent performance of ministerial duties. The distinction between actions in tort and actions on the contract may be confusing. *Gazija,* at 217. If the law imposes a duty on a party to a contract, apart from duties imposed by the contract itself, breach of the legally imposed duty is tortious negligence. *See Gazija,* at 217–19. The present action states a claim for tortious negligence if, but only if, the law imposes on the Buttrey clerk a duty to use reasonable care in issuing lottery tickets.

Cases in which negligent performance of a contract gives rise to an action for negligence have generally been those in which the contract involves the provision of a service, and the law imposes the duty to use reasonable care in

providing the service. *See Yeager v. Dunnavan, supra,* and cases cited therein. The sale of lottery tickets does not involve the provision of a service. Mr. Thao has provided no authority for the proposition Buttrey owed him a duty to use reasonable care in selling him a lottery ticket. The complaint does not state a claim for negligence.

Since the action is not based in tort, the statute waiving the State's immunity from actions based on its tortious conduct, RCW 4.92.090, has no relevance.

Buttrey contends this court has no jurisdiction to entertain this appeal because the amount in controversy does not exceed $200. *See Yakima Cy. Credit Serv., Inc. v. Mons,* 26 Wn. App. 911, 614 P.2d 691 (1980).

> The appellate jurisdiction of the court of appeals does not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property does not exceed the sum of two hundred dollars.

RCW 2.06.030. Appellate jurisdiction is not presumed, and the plaintiff has the burden of establishing the amount in controversy in the averments of his pleadings. *Sherman v. Babcock,* 92 Wash. 546, 548, 159 P. 781 (1916). The pleadings in this case do not allege any specific amount in controversy. However, counsel noted at oral argument the prize was $1 million; there were two other winning tickets; Mr. Thao would have been the third; therefore, his share would have been one–third of the total prize and thus in excess of $200.

▪ CDC and Buttrey have requested their attorney fees for this appeal. RAP 18.9(a) authorizes the imposition of sanctions for bringing a frivolous appeal. *Streater v. White,* 26 Wn. App. 430, 434, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980). An appeal is frivolous if it is so devoid of merit that there is no possibility of reversal. *Streater,* at 434. All doubts should, however, be resolved in favor of the appellant. *Streater,* at 435.

This case involves the interpretation of regulations which have never been authoritatively construed; it is not devoid of merit as to Buttrey.

However, the only basis for a claim against CDC was a contention of negative training. If the clerk did in fact use one play slip twice, it is almost impossible to see how any training could prevent that from ever occurring. There is no contention the machine erred. Nonetheless, CDC's participation on the issue of negligence versus contract was helpful. Since this is a case of first impression, we decline to award attorney fees.

The dismissal is affirmed.

THOMPSON and SHIELDS, JJ., concur.