[No. 27044-7-II. Division Two. June 21, 2002.]

SUPERIOR ASPHALT AND CONCRETE COMPANY, ET AL., *Appellants*,
v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Ryan M. Edgley*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Amanda J. Goss, Assistant*, for respondent.

HOUGHTON, J. — The Department of Labor and Industries (L&I) issued five notices of violation of the prevailing wage act to Superior Asphalt and Concrete Company (Superior) and Western States Asphalt Company (Western States) for failure to pay the prevailing wage to their employee truck drivers who delivered road construction materials to public works projects. Superior and Western States appealed the notices of violation to the Office of Administrative Hearings, where an administrative law judge (ALJ) sustained the notices of violations. The L&I director affirmed the ALJ's decision, and the superior court also affirmed the director's decision. Superior and Western States appeal from the trial court's decision. We affirm.

## FACTS[1]

Superior and Western States are 2 of 13 subsidiary corporations wholly owned by Superior Asphalt and Paving Company, a holding company that contracts for highway and street construction projects (specializing in surfacing and paving) or supplying materials to such projects. Superior and Western States are established materials suppliers, producing and delivering sand, dirt, gravel, crushed rock, and asphalt for both publicly and privately funded projects.

This case deals with five public works projects located throughout the state of Washington for which the two companies supplied road construction materials.[2] Superior supplied and delivered road construction materials to three public works projects: Indian Creek Bridge, Summitview Avenue, and West Valley Middle School. Western States supplied and delivered road construction materials to two public works projects: Cape Horn and Columbia Gateway.

---

[1] Virtually all the facts are undisputed as the parties submitted a detailed and comprehensive prehearing stipulation to the ALJ.

[2] Superior and Western States do not dispute that all five of these projects are "public works" projects and, therefore, the prevailing wage act governs. The record does not disclose the exact locations of these construction projects, but it appears that the Cape Horn and Columbia Gateway projects are located in Skamania County and the other three projects are located in Yakima County.

Superior and Western States delivered the materials by several methods, including tailgate, belly dump, spreader box or paving machine, and stockpile. In the tailgate method of delivery, the driver delivers the materials using a dump truck. The driver is told to dispense his load at certain locations after arriving at the jobsite. He then maneuvers his truck into position, raises the bed of his truck, and empties his load. To control the rate of the materials being dispensed, the driver hooks a chain between the truck bed and the tailgate so that when he raises the truck bed, the chain restricts the opening in the gate. With the chain in place and the truck bed raised, the driver controls the flow rate of the materials and hence the thickness of the layer of materials on the ground by moving his truck forward as his load empties. The tailgate method allows the delivery of materials directly onto the roadbed.

The belly dump method involves using a truck equipped with a release gate on the bottom (or belly) of the truck bed. The belly dump method also allows the materials to be delivered directly onto the roadbed. When a truck arrives at the jobsite, the driver positions his truck over the roadway and opens the belly gate. The driver controls the rate of the materials being dispensed onto the roadbed by moving his truck forward as it empties. This results in a strip of materials commonly referred to as a "windrow." Administrative R. (AR) at 224.

The spreader box or paving machine method is where the truck driver backs his dump truck against a machine, raises his truck bed, and delivers the materials directly into the machine. The machine then lays the materials onto the roadbed. The holding capacity of the spreading machine cannot accommodate a full truckload of materials. Therefore, the truck remains with the spreading machine, and the truck driver works in concert with the spreading machine operator to control the rate of the materials being emptied into it. After delivery of the materials, other workers must process it to complete the construction process.

In the stockpile method, the driver uses a dump truck and empties his load on the ground in a pile for future use. To get the materials from a stockpile to the needed location, a front end bucket loader is used to scoop up the materials and place it at the needed location.

These public project contracts called for paying the prevailing wage to workers on the projects. The prevailing wage for the workers ranged from $17.00 to $19.50 per hour. The typical wage ranged from $10.00 to $13.00 per hour. Superior and Western States differentiate the truck drivers' times according to their activities. Time spent at the gravel pit or asphalt plant to load the materials is referred to as "loading time." AR at 223. Time spent transporting the materials to the jobsite and returning to the materials supply source to pick up the next load is called "drive time." AR at 223. Time spent waiting at the jobsite to deliver the materials is called "wait time." AR at 223. And time spent emptying the loads at the jobsites is called "delivery time." AR at 223. Superior and Western States paid the truck drivers the prevailing wage for only the wait time and delivery time. They paid the truck drivers the normal wage for loading time and drive time.

On a typical day, the truck drivers made between six and eight deliveries. The bulk of the truck drivers' time is spent on the road traveling between the materials supply source and the jobsites and vice versa. The drive time ranged from 30 to 90 minutes each way, depending on the distance between the materials supply source and the jobsite. The loading time at the materials supply source averaged from 5 to 15 minutes per load. The wait time at the jobsite was between 0 and 15 minutes. It took approximately 5 to 15 minutes for the truck drivers to deliver each load at the jobsite.

L&I sought to recover from Superior and Western States the difference between the prevailing wage and the actual wage paid to the truck drivers for the loading time and

drive time,[3] in addition to civil fines and penalties. L&I assessed Superior a total of $14,109.17 and Western States a total of $29,663.34 in wages due and civil fines and penalties. Superior and Western States do not dispute these calculations. They appeal the superior court's ruling affirming the director's decision upholding the ALJ's determination as to the drivers' types of activity and their corresponding wage rates.

## ANALYSIS

### Standard of Review

 An appeal from an L&I notice of violation of the Prevailing Wage Act is governed by chapter 34.05 RCW, the Administrative Procedure Act (APA). RCW 39.12.065(1). In reviewing an administrative action, we sit in the same position as the trial court and apply the APA standards directly to the administrative record in front of the agency. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We review questions of law de novo, but we accord substantial weight to the agency's interpretation of the statutes it administers. *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988) (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983)).

 We review findings of fact for substantial evidence in light of the whole record. RCW 34.05.570(3)(e). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth or correctness of the matter. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). On mixed questions of law and fact, we determine the law independently, then apply it to the facts as found by the agency. *Hamel v. Employment Sec. Dep't*, 93 Wn. App. 140, 145, 966 P.2d 1282 (1998), *review denied*, 137 Wn.2d 1036 (1999).

---

[3] Superior and Western States already paid the truck drivers the prevailing wage rate for the waiting time and delivery time.

Scope of the Prevailing Wage Act

Superior and Western States contend that L&I and the superior court incorrectly interpreted the prevailing wage act or, alternatively, misapplied it to the facts in this case. Specifically, they argue that the delivery of road construction materials by the truck drivers here does not constitute " 'labor upon a public work.' " Appellants' Br. at 13.

 The Washington prevailing wage act provides in part: "The hourly wages to be paid to laborers, workers, or mechanics, upon all public works . . . shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality within the state where such labor is performed." RCW 39.12.020. This statute is based, in part, on the federal Davis-Bacon Act, 40 U.S.C. § 276a, but provides broader coverage " 'to protect the employees of government contractors from substandard earnings and to preserve local wage standards.' " *Everett Concrete*, 109 Wn.2d at 823 (quoting *Unity Bank & Trust Co. v. United States*, 756 F.2d 870, 873 (Fed. Cir. 1985)). The prevailing wage act, chapter 39.12 RCW, is remedial in nature and should be construed liberally to carry into effect the purpose behind the statute. *Everett Concrete*, 109 Wn.2d at 823. Further, the intended beneficiaries of the prevailing wage act are the workers, not the government contractors or their assignees. *Everett Concrete*, 109 Wn.2d at 823.

 L&I implemented the following regulation to describe the scope of the prevailing wage act as it pertains to the production and delivery of gravel, concrete, asphalt, and similar materials:

> (2) All workers, regardless of by whom employed, are subject to the provisions of [the Prevailing Wage Act] when:
>
> (a) They deliver [sand, gravel, crushed rock, concrete mix, asphalt, or other similar] materials to a public works project site and perform any spreading, leveling, rolling, or otherwise participate in any incorporation of the materials into the project; or

(b) They wait at or near a public works project site to participate in the incorporation of any of the above-listed materials into the project; or

(c) They remove any materials from a public works construction site pursuant to contract requirements or specifications (e.g., excavated materials, materials from demolished structures, cleanup materials, etc.); or

(d) They work in a materials production facility (e.g., batch plant, borrow pit, rock quarry, etc.,) which is established for a public works project for the specific, but not necessarily exclusive, purpose of supplying materials for the project.

(3) Workers are not subject to the provisions of [the prevailing wage act] when:

(a) The employees' duties do not include spreading, leveling, rolling, or otherwise participating in the incorporation of the delivered materials into a public works project, and they are employed by an established materials supplier either in the production or delivery of sand, gravel, crushed rock, concrete mix, asphalt or other similar materials[.]

WAC 296-127-018.

In *Superior Asphalt & Concrete Co. v. Department of Labor & Industries*, 84 Wn. App. 401, 929 P.2d 1120 (1996), *review denied*, 132 Wn.2d 1009 (1997), we upheld the validity of this regulation. We concluded that "the reference to workers 'upon all public works' in RCW 39.12.020 is sufficiently broad to encompass contract workers who deliver materials to a public worksite and spread, level, roll, or otherwise incorporate those materials into the project." *Superior Asphalt*, 84 Wn. App. at 410. We held that WAC 296-127-018 is as valid because it was consistent with the prevailing wage act and its purposes. Because the only issue in that case was the validity of the regulation and not its application, we declined to address whether delivering construction materials using the tailgate method constitutes labor "upon" a public works project. *Superior Asphalt*, 84 Wn. App. at 410. The issue is now squarely before us.

Delivery Time

Although Superior and Western States paid their truck driver employees the prevailing wage for the time they physically spent at the public work sites (waiting time and delivery time), they assert that delivery of materials by any method, whether by stockpile, tailgate, belly dump, or paving machine, does not constitute " 'labor upon a public work.' " Appellants' Br. at 13. They argue that the truck drivers here do nothing more than make " 'mere delivery' of the material" and thus do not participate in the incorporation of the material into the project to warrant compensation at the prevailing wage. Appellants' Br. at 12. We disagree.

As L&I points out, the truck drivers do not simply deliver the materials, they "participat[e] in the spreading of material in a certain manner over the roadway." Resp't's Br. at 18. In the tailgate and belly dump methods of delivery, the drivers spread the materials onto the roadbed as they move their trucks forward while emptying their loads. To some extent, this achieves a certain level of spreading. In the spreader box or paving machine method of delivery, the drivers empty their loads directly into a machine that lays down a layer of the materials on the road. While the truck is emptying into the machine, the truck driver and the machine operator work in tandem to ensure that the materials flow into the machine at a certain rate. This indicates more than just "mere delivery," as Superior and Western States suggest.

Superior and Western States also assert that as a general rule, "prevailing wage is **not** required to be paid to the employees of materialmen (suppliers of standard materials used in public works projects)." Appellants' Br. at 10. This is an inaccurate statement of the law. Material supplier employees are not entitled to the prevailing wage when their duties do not include "spreading, leveling, rolling, or otherwise participating in the incorporation of the delivered materials into a public works project." WAC 296-127-

-018(3)(a). If the employees' duties include delivering the materials to a public works project and any of these activities, they are entitled to the prevailing wage, regardless of who hires them, including material suppliers. WAC 296-127-018(2)(a); *Superior Asphalt*, 84 Wn. App. at 410.

As noted, the truck drivers here did more than simply deliver the materials. They either spread the material or, at the very least, participated in the incorporation of the materials into the public works projects. By delivering the materials directly onto the roadbed using the tailgate and belly dump methods, they achieved a certain level of "spreading" the materials. Likewise, emptying their loads directly into the spreading machine and coordinating with the machine operator to ensure a specific rate of materials flow while the machine lays down a layer of the materials is a clear example of incorporating the materials into the construction process.

Workers are entitled to the prevailing wage when they deliver materials to a public works project and "participate in any incorporation of the materials into the project." WAC 296-127-018(2)(a). Since 1992, L&I has maintained that these methods of delivery constitute "incorporation of those materials into the project site."[4] AR at 338. This is logical. If the materials were simply dumped at the work site in a stockpile, the contractor would have to devote, at a minimum, a worker and piece of equipment, such as a front end bucket loader to move the materials to the location where it is needed. By delivering the materials directly onto the roadbed or into the spreading machine, the contractor achieves a higher level of efficiency. This eliminates the contractor's cost of paying the wage of the worker to move the materials from the stockpile to the location where

---

[4] In a memorandum directed at government contractors dated December 10, 1992, L&I specifies what methods of delivery it considers relevant for WAC 296-127-018. According to L&I, delivery of hot asphalt or wet concrete, delivery by tailgate or belly dump, and delivery of materials into a machine always constitute "incorporation of those materials into the project site." AR at 338. Delivery of materials into a "true stockpile" that is physically separated from the actual location of construction and that must be physically moved from the stockpile to be put into service does not constitute incorporation of the materials. AR at 338.

needed, wear and tear on equipment, and the cost of fuel needed to operate the equipment.

Taking into account the remedial nature of the prevailing wage act, its liberal construction by our courts to protect the worker, and L&I's interpretation of the statute and its due deference, we hold that the truck drivers in this case participated in the incorporation of the materials into the project sites. Therefore, the drivers are entitled to compensation at the prevailing wage when they made their deliveries.

## Loading Time and Drive Time

Superior and Western States further contend that the truck drivers are not entitled to the prevailing wage for the loading time and drive time because these activities do not constitute " 'labor upon a public work.' " Appellants' Br. at 15. Superior and Western States attempt to segregate and distinguish the times and activities of the truck drivers. They note that although they deny the legal obligation to do so, they paid the truck drivers the prevailing wage for the time they were physically at the jobsite.[5]

Superior and Western States rely, at least in part, on the mistaken notion that work done on site is "upon public works" but work done off site is not. Nevertheless, the location of the work done on a public works project does not control whether the workers are entitled to the prevailing wage. *See Everett Concrete*, 109 Wn.2d at 831-32 (employees of off site manufacturers of nonstandard concrete tunnel liners entitled to prevailing wage to avoid the use of

---

[5] Superior and Western States assign much significance to the word "when" in WAC 296-127-018(2)(a) ("All workers . . . are subject to . . . chapter 39.12 RCW *when* . . . [t]hey deliver . . . .") (emphasis added). They adopt a literal and narrow reading of this regulation, interpreting it to mean the prevailing wage act does not apply to the times when the truck drivers are not engaged in the act of delivering the materials. This position is contrary to the broad and liberal interpretation of the prevailing wage act our courts have adopted. *Everett Concrete*, 109 Wn.2d at 823; *City of Spokane v. Dep't of Labor & Indus.*, 100 Wn. App. 805, 811, 998 P.2d 913 (2000); *Heller v. McClure & Sons*, 92 Wn. App. 333, 338, 963 P.2d 923 (1998), *review denied*, 137 Wn.2d 1028 (1999); *Superior Asphalt*, 84 Wn. App. at 406.

cheap labor from distant areas and circumvent the purpose of the prevailing wage act); *see also* WAC 296-127-018(2)(d) (employees of production facility entitled to prevailing wage if they supply materials specifically, but not necessarily exclusively, for a public works project).

Superior and Western States attempt to distinguish *Everett Concrete* from the present case. They argue that the truck drivers here are not entitled to the prevailing wage because the gravel and asphalt that they delivered in this case were standard materials, unlike the nonstandard concrete tunnel liners in *Everett Concrete*. This argument is unpersuasive.

*Everett Concrete* addressed the issue of whether employees of an off site manufacturer producing a nonstandard item specifically for a public works project were entitled to the prevailing wage. Hence, the focus there was on the *product*. The focus here is not on the product, but the *method of delivery*. From the workers' perspective, there is little difference between employees of a manufacturer producing nonstandard items specifically for a public works project and truck driver employees of materials suppliers transporting and delivering materials specifically to the public works jobsites. In both situations, the employees provide labor for the specific purpose of fulfilling a portion of the public works contract. If one group of workers is entitled to the prevailing wage, the other group should also be similarly entitled to the prevailing wage.

Here, the more appropriate factor to focus on in considering whether the truck drivers are entitled to the prevailing wage for loading time and drive time is the *purpose* for which the materials are delivered. In *Heller v. McClure & Sons*, 92 Wn. App. 333, 963 P.2d 923 (1998), *review denied*, 137 Wn.2d 1028 (1999), a mechanic employee of a government contractor who performed on-site maintenance on the contractor's equipment sought compensation at the prevail-

ing wage rate.[6] Division Three of this court held that the mechanic employee was entitled to the prevailing wage because the work was "directly related to the prosecution of the [contracted] work" and was "necessary for the completion of that work." *Heller*, 92 Wn. App. at 337.

The truck drivers' services not only were directly related to the road construction projects, but also were critical to timely complete the projects. Without the truck drivers picking up, transporting, and delivering the materials, there would be no materials to build the roads. Applying the *Heller* standards to the present case, the truck drivers are entitled to the prevailing wage for the loading time and driving time.

Finally, Superior and Western States argue that the truck drivers are not entitled to the prevailing wage because as employees of material suppliers, they performed work that employees of the contractors do not perform. Their argument is based on the premise that because the truck drivers do not displace some of the contractors' other employees, who would be entitled to the prevailing wage, they are not entitled to the prevailing wage.

But the facts do not support Superior and Western States' argument. John Arambul, vice-president and general manager of Western States Paving Company (another subsidiary of Superior Asphalt and Paving Company), testified that as a contractor or subcontractor, he has the option of either having the materials supplier deliver the materials or picking up the materials from the supply point, transporting it to the jobsite, and delivering it himself. The determining factor is the cost—if he can pick up and deliver the materials for less than what the supplier charges, he will do it himself. Thus, the activities of picking up the materials and transporting them to the jobsites are not necessarily within the exclusive province of the materials

---

[6] The court declined to address whether the employee was entitled to the prevailing wage for work he did off site because he abandoned this claim and thus it was not before the court. *Heller*, 92 Wn. App. at 337.

supplier. If the contract calls for it, the contractor can assume these activities himself.

Under WAC 296-127-018(1)(b), employees of contractors and subcontractors are entitled to the prevailing wage if "[t]hey are engaged in the transportation of [sand, gravel, crushed rock, concrete mix, asphalt, or other similar] materials for use on a public works project, whether or not they perform any work on the project site." Here, had the contractors or subcontractors chosen to pick up, transport, and deliver the materials, rather than have Superior and Western States perform these services, the contractors or subcontractors would have had to pay their employees the prevailing wage. Hence, Superior and Western States' argument fails.

Accordingly, the truck driver employees of Superior and Western States are entitled to compensation at the prevailing wage for the duration of their delivery cycle, including loading time, driving time, waiting time, and delivery time.

Affirmed.

HUNT, C.J., and MORGAN, J., concur.

Reconsideration denied August 2, 2002.

Review denied at 149 Wn.2d 1003 (2003).