177 P.3d 745 (2008)
Christopher R. GRANTON, Appellant,
v.
WASHINGTON STATE LOTTERY COMMISSION, Respondent.
No. 35778-0-II.
Court of Appeals of Washington, Division 2.
February 20, 2008.
*746 Christopher Granton (Appearing Pro Se).
Michael Steven Tribble, Agriculture and Health Division, Olympia, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Christopher Granton appeals the Office of Administrative Hearing's (OAH) grant of summary judgment dismissing his claims against the Washington State Lottery Commission. Granton argues that, because the "draw break" for the Mega Millions lottery occurred early, he was unable to purchase a ticket that he believes would have been a winning Mega Millions ticket and that he should be treated as a de facto ticket holder. Because Granton did not purchase a valid Mega Millions ticket, he is not eligible to receive a prize award and we affirm.

FACTS
¶ 2 On April 8, 2005, at around 6:40 pm, Granton filled out a lottery play slip[1] and handed it to a convenience store clerk at the Steele Street Texaco Station in Tacoma in an attempt to purchase a Mega Millions lottery ticket. The clerk attempted to process the ticket, but the ticket distribution machine reported an error, "Draw Break[[2]]Wager Refused by Central," and was unable to complete the transaction. Administrative R. at 102-03. As a result, Granton never purchased a ticket for the April 8, 2005 game. *747 Subsequently, Granton contacted the Lottery Commission and sought to collect the April 8, 2005 Mega Millions jackpot,[3] claiming that the numbers on the play slip he used to attempt to purchase a Mega Millions ticket matched the winning numbers.
¶ 3 On June 27, 2005, the Lottery Commission denied Granton's claim because he could not produce a winning ticket for the game in question. During the course of the Lottery Commission's investigation into Granton's claim,[4] it researched and evaluated the automated terminal transaction list generated by the ticket distribution machine and found no "draw break" messages on April 8, 2005, on or around 6:50 pm. Instead, the Lottery Commission determined that all "draw breaks" occurred statewide from 7:45 to 8:01 pm, as scheduled. Granton requested an administrative hearing on the matter.
¶ 4 On August 25, 2005, the OAH held a prehearing conference in which the Lottery Commission informed Granton that it intended to move for summary judgment dismissal of his claim. Granton requested that the Lottery Commission produce its investigative file regarding his claim and one year's worth of data from third-party contractor G-TECH regarding any errors that occurred on the ticket distribution machine that failed to process his play slip. Granton sought to show that the machine had a history of errors of which the Lottery Commission should have been aware. The Lottery Commission informed Granton and the Administrative Law Judge (AU), Judge Jane L. Habegger, that it did not have machine data for that entire period of time because, during the course of its own investigation, it had only requested ticket distribution machine data for the week surrounding April 8, 2005. The Lottery Commission offered to hand over its investigative file to Granton along with the ticket distribution machine data it had collected from G-TECH. ALJ Habegger informed Granton that if he wanted more data than the Lottery Commission had, Granton needed to subpoena the information from G-TECH. AU Habegger offered to help Granton draft the subpoenas, but told Granton that he would have to serve the subpoenas himself. Subsequently, the Lottery Commission provided Granton with its complete investigative report, including the data it had collected from G-TECH.
¶ 5 On August 26, 2005, the Lottery Commission filed a motion for summary judgment. ALJ Robert C. Krabill set oral arguments for October 4, 2005.
¶ 6 On September 22, 2005, Granton filed a request for public records with the OAH. Granton repeated his request for data from G-TECH. The Lottery Commission stated that it was willing to work cooperatively with Granton and G-TECH to provide. Granton with the data he was seeking should summary judgment be denied and the data become arguably relevant for a hearing on the merits of Granton's claim.
¶ 7 On October 11, 2005, AU Krabill issued an initial order dismissing Granton's claim because he never actually purchased a ticket for the Mega Millions drawing on April 8, 2005, as required by WAC 315-38-050(3)[5] to claim a Mega Millions prize. Granton filed a petition for review by the Director of the Lottery Commission and, on March 7, 2006, the Director of the Lottery Commission issued his final order, affirming ALJ Krabill's initial order. On March 17, 2006, Granton *748 moved for reconsideration. The Lottery Commission denied the motion.
¶ 8 On March 27, 2006, Granton filed a petition for judicial review in Thurston County Superior Court which was assigned to Judge Paula Casey. On November 15, 2006, the case was reassigned to Judge Anne Hirsch. Judge Hirsch affirmed the Lottery Commission's final order. Granton timely appeals.

ANALYSIS
Standard of Review
¶ 9 We review an order of summary judgment de novo. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate only if "the written record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." WAC 10-08-135. We view all facts in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805.
¶ 10 In reviewing an administrative action, we sit in the same position as the trial court and apply the Washington Administrative Procedure Act (APA)[6] standards directly to the agency's administrative record. Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 112 Wash.App. 291, 296, 49 P.3d 135 (2002) (citing Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993)), review denied, 149 Wash.2d 1003, 70 P.3d 964 (2003). Under the APA, the "burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). According to the APA, we will reverse an administrative decision that (1) violates a constitutional provision on its face or as applied, (2) lies outside the agency's lawful authority or jurisdiction, (3) is a result of an erroneous interpretation or application of the law, (4) is not based on substantial evidence, or (5) is arbitrary or capricious. RCW 34.05.570(3); see also Tapper, 122 Wash.2d at 402, 858 P.2d 494. We may overturn an agency final order if it is inconsistent with an agency rule and the agency fails to explain the inconsistency by stating facts and reasons demonstrating a rational basis for the inconsistency. RCW 34.05.570(3)(h).
¶ 11 Like the trial court, we review questions of law de novo, but we accord substantial weight to the agency's interpretation of the statutes it administers. Superior Asphalt, 112 Wash.App. at 296, 49 P.3d 135 (citing Everett Concrete Prods., Inc. v. Dep't of Labor & Indus., 109 Wash.2d 819, 823, 748 P.2d 1112 (1988)).
Valid Ticket
¶ 12 Granton argues that, because the "draw break" occurred early and shut down the ticket distribution machine at the incorrect time, he was unable to purchase a ticket that he believes would have been a winning Mega Millions ticket. Specifically, Granton argues that the Lottery Commission should treat him as a de facto ticket holder because he entered into a contract with the Lottery Commission after he filled out his play slip and attempted to hand his money over to the cashier. The Lottery Commission responds that a ticket is the only valid proof that the party placed the wager and the only valid receipt for claiming or redeeming a prize and, because Granton admittedly did not purchase a ticket, he is not entitled to claim the Mega Millions jackpot. Granton admits that he was unable to purchase a ticket for the April 8, 2005 Mega Millions game.
¶ 13 Under WAC 315-38-050(3), "[u]nder no circumstances will a claim be paid for . . . the jackpot prize . . . without an official Mega Millions ticket . . . and such ticket shall be the only valid proof of the wager placed and the only valid receipt for claiming or redeeming any prize." WAC 315-38-050(3) (emphasis added).
¶ 14 The lottery is contractual in nature. Thao v. Control Data Corp., 57 Wash.App. 802, 805, 790 P.2d 1239 (1990). *749 Lotteries have elements of a chance, a consideration, and a prize. Thao, 57 Wash.App. at 805, 790 P.2d 1239. The purpose of a lottery is to induce many contracts by presentation to the general public as a general offer and with the Conditions of acceptance prescribed. Thao, 57 Wash.App. at 805, 790 P.2d 1239 (quoting Seattle Times Co. v. Tielsch, 80 Wash.2d 502, 507, 495 P.2d 1366 (1972)). The conditions of acceptance require the acceptors to pay something, or do something, or both. Thao, 57 Wash.App. at 805, 790 P.2d 1239 (quoting Seattle Times Co., 80 Wash.2d at 507, 495 P.2d 1366).
¶ 15 In Thao, the court held that the plaintiff and his nephew accepted the lottery's general offer of a chance and created a valid contract when they (1) completed and submitted the play slip, and (2) paid the price of the lottery ticket. 57 Wash.App. at 806, 790 P.2d 1239.
¶ 16 Unlike Thao, Granton never entered into a contract with the Lottery Commission. He never paid the purchase price of the lottery ticket because the sale was frustrated.[7] Because Granton does not have a valid ticket and was unable to provide the requisite consideration necessary to accept the Lottery Commission's offer of a chance to win a prize, he did not enter into a contract with the Lottery Commission and is not entitled to the Mega Millions jackpot prize.
Action Consistent with Agency Rules
¶ 17 Granton also contends that the Lottery Commission's final order is inconsistent with several agency rules because the Lottery Commission (1) permitted the "draw break" to occur early, contrary to former WAC 315-30-040(2);[8] (2) failed to comply with discovery rules, contrary to WAC 315-20-115;[9] and (3) failed to honor his public disclosure request, contrary to WAC 315-12-050,[10] WAC 315-12-110,[11] RCW 42.56.550,[12] and RCW 42.56.520.[13] But Granton did not purchase a valid Mega Millions ticket as required by former WAC 315-30-050(3) (1989), which is a condition precedent to collect or claim a Mega Millions prize.
Moreover, any deficiencies in the Lottery Commission's process occurred after Granton *750 failed to purchase the requisite ticket, and we need not reach these issues.
Judicial Reassignment and Analysis
¶ 18 Lastly, Granton argues that it was improper for ALJ Krabill to hear his case because ALJ Krabill[14] allegedly had no previous experience reviewing an agency final order. Granton also alleges error with the superior court's analysis when it affirmed the agency's final order. But we "sit[] in the same position as the trial court and apply the APA standards directly to the administrative record in front of the agency." Superior Asphalt, 112 Wash.App. at 296, 49 P.3d 135. Accordingly, although our review of the record reveals no deficiencies, any deficiencies in the superior court process would not alter the result. See Superior Asphalt, 112 Wash. App. at 296, 49 P.3d 135.

Conclusion
¶ 19 Granton did not purchase a Mega Millions ticket and was not entitled to a jackpot prize. We note that State governmental entities have expended significant agency and taxpayer resources investigating and reviewing Granton's patently meritless claims. Although it could have done so, the Attorney General's Office did not move to have this court dismiss Granton's appeal as frivolous. RAP 18.9(c)(2). Nor did it request terms or compensatory damages for being required to respond to a frivolous appeal. RAP 18.9(a). Owing to the Lottery Commission's solicitous consideration for Granton's claim, Granton was apparently unaware of the costs incurred or that he could be required to reimburse the State for having to respond to a frivolous appeal. Like other State governmental entities, we have been forced to expend precious resources reviewing this patently frivolous action. Nevertheless, at this time, we have decided to exercise our discretion and decline to impose sanctions for Granton's frivolous appeal sua sponte. We emphasize that our decision on this point is an exercise of discretion and leniency that may not be repeated in future frivolous appeals such as this one.
¶ 20 We affirm.
We concur: ARMSTRONG, J., and VAN DEREN, A.C.J.
NOTES
[1] A "play slip" is a form on which a player chooses the game he would like to play and selects the numbers he wants to use for that particular game. Administrative R. at 8.
[2] A "draw break" is a period of time between games in which players cannot purchase tickets until the start of the new game. Former WAC 315-30-040(2) (1992).
[3] On April 8, 2005, the Mega Millions jackpot was $102,000,000. Washington Lottery, Mega Millions, Winning Numbers, Past Winning Numbers, http://www.walottery.com/sections/ Lottery-Games/MegaMillion.aspx?Page=PastWinning & year = 2005.
[4] State governmental entities have expended significant resources and taxpayer dollars reviewing and investigating Granton's patently meritless claims. Although it could have done so under RAP 18.9(c)(2), the State did not ask this court to dismiss Granton's appeal as frivolous. Nor did it request terms or compensatory damages for being required to respond to a frivolous appeal. RAP 18.9(a).
[5] WAC 315-38-050(3) states in relevant part:

Under no circumstances will a claim be paid for . . . the jackpot prize . . . without an official Mega Millions ticket matching all game play, serial number, and other validation data residing in the selling party lottery's on-line gaming system computer, and such ticket shall be the only valid proof of the wager placed and the only valid receipt for claiming or redeeming any prize.
(Emphasis added.)
[6] Chapter 34.05 RCW.
[7] Granton repeatedly argues that whether he had a ticket is irrelevant because he was unable, through no fault of his own, to purchase a ticket because an early "draw break" frustrated his purchase. But whether the ticket distribution machine was operating properly or whether the "draw break" did in fact occur early are not issues of material fact, because successfully purchasing a ticket is a requirement for collecting or claiming a Mega Millions ticket. See former WAC 315-30-050(3) (1989).
[8] Former WAC 315-30-040(2) provided:

The director shall announce for each type of on-line game the time for the end of sales prior to the drawings. [Ticket distribution machines] will not process orders for on-line tickets for that drawing after the time established by the director.
[9] WAC 315-20-115(1) provides in relevant part:

Upon request by any party to the adjudicative proceeding, copies of all materials to be presented at the adjudicative proceeding shall be provided to the requester within seven days of the request but, for good cause shown, not less than three business days prior to the date of the hearing.
[10] WAC 315-12-050 states:

Public Records Available.
All public records of the commission and director as defined in WAC 315-12-020(2) are deemed to be available for public inspection and copying pursuant to these rules, except as otherwise provided by RCW 42.17.260, 42.17.310, 42.17.330, WAC 315-12-100, and other applicable laws.
[11] WAC 315-12-110 states:

Denial of Request.
Each denial of a request for a public record shall be accompanied by a written statement to the requestor clearly specifying the reasons for the denial, including a statement of the specific exemption authorizing the withholding of the record and a brief explanation of how the exemption applies to the record withheld. Such statement shall be sufficiently clear and complete to permit the director or his or her designee to review the denial in accordance with WAC 315-12-120.
[12] RCW 42.56.550 requires an agency to show cause as to why it refused a public disclosure request.
[13] Under RCW 42.56.520, agencies must respond promptly to requests for public records. Within five days of receiving a request, the agency must respond by either (1) providing the record, (2) acknowledging that the agency received the request and provide an estimate of the time it will require to respond to the request, or (3) deny the public record request.
[14] Although Granton argues that All Krabill's inexperience prejudiced his case, Thurston County Superior Court Judge Hirsch actually heard the oral arguments and signed the order affirming the Lottery Commission's final order. ALJ Krabill was the ALJ who initially heard Granton's case.