# ERVINE GEORGE, Appellant/Plaintiff
## v.
# V.I. LOTTERY COMM'N, et al., Appellees/Defendants

S. Ct. Civ. No. 2009-0066

Supreme Court of the Virgin Islands

December 6, 2010

VINCENT COLIANNI II, ESQ., Colianni & Colianni, St. Croix, USVI, *Attorney for Appellant*.

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellees*.

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and BRADY, *Designated Justice*.[1]

## OPINION OF THE COURT

(December 6, 2010)

HODGE, C.J. Appellant Ervine George (hereafter "George") challenges the Superior Court's July 16, 2009 Judgment, which dismissed George's complaint with prejudice, on the grounds that the Superior Court erred in: (1) concluding that Appellee Virgin Islands Lottery Commission (hereafter "Lottery") did not commit a breach of contract; (2) finding that the Lottery's failure to follow its own internal procedures caused George's damages; and (3) finding that George's damages were a result of his own negligence. For the reasons that follow, we affirm the Superior Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the morning of April 19, 2007, George purchased a Virgin Islands grand prize lottery ticket for $30.00 from Lenora Paul (hereafter "Paul"), a licensed lottery dealer who was selling tickets by the side of a road in St. Croix. The lottery drawing occurred later that day, and ticket number 5845 was the winner of the $175,000.00 grand prize. A few days later, George, who had never bought a lottery ticket before, (Hr'g Tr. 67, June 29, 2009), saw several lottery dealers by the roadside and stopped to ask whether his ticket had won any amount of money. Savino Brito (hereafter "Brito"), a licensed lottery dealer, told George that his ticket number 5845 — which was actually the grand prize winner — had won $500.00. Brito offered to cash George's ticket for him immediately. In exchange for his ticket, George received from Brito $430.00 in cash and two Puerto Rico lottery tickets, which cost $35.00 each. On April 24, 2007, Brito presented ticket number 5845 to the St. Croix lottery office and, two days later, received a check from the Lottery in the amount of $175,000.00. That

---

[1] Associate Justice Maria M. Cabret is recused from this matter. The Honorable Julio A. Brady, a sitting judge of the Superior Court, has been designated in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

same day, Brito opened a checking account and cashed the grand prize check. Soon thereafter, Brito, a native of the Dominican Republic who was residing in the Virgin Islands with a green card, fled to the Dominican Republic with a cashier's check in the amount of $125,000.00. Only $18,000.00 remained in his checking account, which the police subsequently froze; it is unclear what became of the remaining $32,000.00 of the grand prize money.

Approximately two weeks after the April 19, 2007 lottery drawing, George saw Paul selling lottery tickets in the same location where he had bought his first ticket from her. George told Paul that he wished to purchase another lottery ticket with number 5845 because that number had won him $500.00 during the previous drawing. Paul informed George that ticket number 5845 had actually won the grand prize for the April 19, 2007 drawing. After George explained that Brito had told him the ticket was worth $500.00 and had cashed it for him, George and Paul went to the Lottery Office and explained what had occurred to Paul Flemming (hereafter "Flemming"), the Executive Director of the Lottery at that time. George and Paul were subsequently interviewed by Flemming and Ray Chesterfield (hereafter "Chesterfield"), the Director of Investigations for the Lottery. On May 3, 2007, George filed a police report, claiming that Brito had defrauded him.

The resulting investigation revealed that Paul had visited the Lottery Office on April 20, 2007 and informed Florette BeGraff (hereafter "BeGraff"), a supervisor for the Lottery, that she had sold the grand prize winning ticket[2] and that she had sold it to one of two women — Gertrude or Thelma — or to a young man that worked at HOVENSA. Paul requested that BeGraff notify her if Thelma claimed the grand prize, because Thelma still owed Paul $30.00 for the lottery ticket she had purchased on credit. Paul visited the Lottery Office several more times over the following two weeks and was told that no one had claimed the grand prize.

Pursuant to the investigation by Chesterfield and police Sergeant Mark Cornero ("Cornero"), a warrant was issued for Brito's arrest, and he was charged with obtaining money by false pretenses, grand larceny, and

---

[2] According to Paul's testimony at the subsequent bench trial, licensed lottery dealers are awarded a bonus by the Lottery if they sell the grand prize winning ticket.

making a false claim upon the government. The police learned that Brito was in Santo Domingo, Dominican Republic, but were unable to effectuate his arrest. Thereafter, Cornero and Chesterfield recommended to the Lottery that a $500.00 reward be posted in Santo Domingo for information leading to Brito's whereabouts, but the recommendation was never acted upon.

On October 11, 2007, George filed a complaint against the Lottery and Flemming, in his capacity as Executive Director of the Lottery, seeking damages for a breach of contract. After the parties failed to successfully mediate the dispute, the Lottery moved to dismiss for failure to state a claim. The trial court denied the motion to dismiss on June 24, 2009. On June 29, 2009, a bench trial was held at which both parties called several witnesses to testify. Several witnesses testified that the Lottery has an internal policy requiring that the Executive Director approve the release of a grand prize check before paying the lottery winner. Testimony revealed that the check and accompanying documents were never given to Flemming for approval and that he would not have paid the grand prize to Brito without further inquiry, because he would have found it unusual for a lottery dealer to claim a prize with a lottery ticket purchased from another lottery dealer.[3]

The Superior Court, at its July 10, 2009 hearing, orally dismissed George's complaint on the following grounds:

> The question is, what responsibility, if any, . . . the Lottery Commission had for the loss incurred to the Plaintiff? The Court can find no basis on which to hold the Lottery Commission responsible for the losses suffered by the Plaintiff.
>
> The Lottery Commission had no notice, number one, . . . of the fraudulent conduct [by] which Mr. George lost his ticket, and while there is some evidence that the Lottery Commission may have violated existing internal policies, the violation of the existing policies did not cause the loss to Mr. George. The loss suffered by Mr. George is because of his own negligent conduct in exchanging the ticket for $500 based on Mr. Brito's statement it was only worth $500.

---

[3] According to the testimony at trial, lottery dealers pay $23.00 when they purchase the lottery tickets from the Lottery and resell the tickets to the public for $30.00. Thus, it would be highly unusual for a lottery dealer to buy a ticket from another dealer for $30.00 when he can buy one directly from the Lottery for $7.00 less.

(Hr'g Tr. 3-4, July 10, 2009.) A July 16, 2009 Judgment memorialized the trial court's oral ruling. George filed a timely notice of appeal on July 24, 2009.[4]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The Supreme Court has jurisdiction over this appeal, which arises from a final judgment of the Superior Court, pursuant to V.I. CODE ANN. tit. 4 § 32(a) (Supp. 2008). The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

### B. The Superior Court Did Not Err When It Found the Lottery Did Not Breach its Contract and that the Lottery's Actions Were Not the Cause of George's Damages

■ We agree with both parties that a lottery winner's entitlement to a prize is governed by contract law. *See, e.g., Smith v. State Lottery Comm'n*, 812 N.E.2d 1066, 1072 (Ind. Ct. App. 2004); *Haynes v. Dep't of Lottery*, 630 So.2d 1177, 1179 (Fla. Ct. App. 1994); *Driscoll v. State, et al.*, 265 N.J. Super. 503, 627 A.2d 1167, 1171 (1993); *Parsons v. South Dakota Lottery Comm'n*, 504 N.W.2d 593, 597 (S.D. 1993); *Thao v. Control Data Corp.*, 57 Wn. App. 802, 790 P.2d 1239, 1241 (1990); *Valente v. Rhode Island Lottery Comm'n*, 544 A.2d 586, 589 (R.I. 1988); *Ruggiero v. State Lottery Comm'n*, 21 Mass. App. Ct. 686, 489 N.E.2d 1022, 1024 (1986); *Van Gulik v. Res. Dev. Council for Alaska, Inc.*, 695 P.2d 1071, 1073 (Alaska 1985); *Coleman v. State*, 77 Mich. App. 349, 258 N.W.2d 84, 86 (1977). In contract terms, the Lottery makes a general offer to the public that the purchaser of a lottery ticket has a chance of winning a prize in accordance with the rules and regulations of the Lottery, and, by purchasing the lottery ticket, the purchaser accepts the

---

[4] "In a civil case in which an appeal is permitted by law as of right from the Superior Court to the Supreme Court, the notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from; but if the Government of the Virgin Islands or an officer or agent thereof is a party, the notice of appeal may be filed by any party within sixty days after such entry." V.I.S.CT.R. 5(a)(1).

public offer and agrees to the established rules and regulations. *See, e.g., Smith,* 812 N.E.2d at 1072; *Haynes,* 630 So.2d at 1179; *Thao,* 790 P.2d at 1241; *Coleman,* 258 N.W.2d at 86.

■ To prevail on a claim for breach of contract under Virgin Islands law, a plaintiff must establish: (1) the existence of a contract between the parties; (2) that the defendant breached a material duty imposed by that contract; and (3) that damages resulted from the breach. *See Stallworth Timber Co. v. Triad Bldg. Supply,* 968 F. Supp. 279, 282, 37 V.I. 49 (D.V.I. App. Div. 1997) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 235, 237, 241). In this case, the Lottery agrees that it had entered into a contract with George when George purchased the lottery ticket, (Appellee's Br. at 20), and George agrees that the purchaser of a lottery ticket agrees to be bound by the Lottery's rules and regulations, (Appellant's Br. at 12). However, the Lottery disagrees that it breached its contract when it paid Brito rather than George the grand prize money because the Lottery maintains that it paid the prize in accordance with its rules and regulations even though it may have failed to completely follow its internal procedures. (*Id.*) We agree.

■■ Pursuant to the rules and regulations established by the Lottery, "[t]he prizes *shall be paid* by the Director of the Lottery as soon as the result of the corresponding drawing and the *legitimacy of the winning tickets* are ascertained, *without any delay* than may be necessary to make the corresponding liquidation," and that "[m]ajor prizes *shall be paid* by check by the Director on presentation of the *winning ticket* and the verification of *its* legitimacy. . . ." 32-13 V.I. CODE R. § 241-9(a)-(b) (1999) (emphases added). Thus, the Lottery's rules and regulations, by their own terms, only place a duty on the Lottery to immediately pay a prize upon establishing the legitimacy of the winning ticket, without any regard to whether the individual bearing the ticket is the same individual who purchased it. In other words, the Lottery's rules and regulations provide that winning tickets are "bearer instruments" or "bearer papers," which are "instrument[s] payable to the person who holds [them] rather than to the order of a specific person." BLACK'S LAW DICTIONARY 1142 (8th ed. 2004); *see also* 11 V.I.C. § 3-109(a) (providing that "[a] promise or order is payable to bearer if it states that it is payable to bearer . . . does not state a payee; or . . . otherwise indicates that it is not payable to an identified person.") Accordingly, immediate payment of the grand prize to Brito — notwithstanding Paul's prior phone calls that she had sold the

winning ticket to either a young man employed with HOVENSA or one of two women — not only fails to rise to the level of breach of contract, but, in the absence of a filing of a lost or stolen prize claim by George,[5] was required by the rules and regulations that George had agreed to when he purchased his lottery ticket.[6]

■■ Likewise, we reject George's claim that the Lottery's failure to follow 32-13 V.I. CODE R. § 241-9(b), which required the Executive Director to pay checks for major prizes, was the proximate cause of George's damages. Although Flemming testified at his deposition that he would not have issued the check to Brito without further inquiry, (Hr'g Tr. 30, June 29, 2009), withholding payment to Brito — in the absence of a lost or stolen prize claim — would have itself violated the pertinent regulation, which mandated that "[m]ajor prizes shall be paid by check by

---

[5] "Prizes for winning tickets alleged to be lost or stolen may be redeemed by the lawful owner if such owner submits a claim therefor within six (6) months of the drawing in which the prizes were won. The claimant shall file an affidavit with the Director alleging the number(s) of the ticket(s) and the quantity of the ticket(s) lost or stolen, the name of the dealer from whom purchased and all other relevant factors as the Director may by regulation prescribe." 32 V.I.C. § 256(b).

At oral arguments in this matter, George's counsel, when asked if section 256(b) authorizes a second payment of the grand prize to the owner of a stolen ticket after a grand prize has already been awarded, stated that it does not because the Legislature could not have intended for the Lottery to pay the same prize twice. Moreover, at oral arguments, George's counsel expressly abandoned an argument in his appellate brief that the Lottery is equitably stopped from asserting that his claim cannot proceed for failure to file the affidavit required by section 256(b) because "the Lottery informed him that they were processing his claim in the absence of the affidavit and he relied upon this representation." (Appellant's Br. at 13 n.1.) Accordingly, because George's counsel expressly waived both of these issues, this Court declines to determine, *sua sponte*, whether (1) section 256(b) would have authorized the Lottery to pay the grand prize to George notwithstanding its prior payment to Brito; and (2) if section 256(b) allows a second payment, whether George could assert the doctrine of equitable estoppel against the Lottery and, if so, whether equitable estoppel would apply to this case.

[6] Because we hold that the Lottery was required to immediately pay the grand prize to Brito upon verifying that the ticket itself was legitimate, it would ordinarily not be necessary for this Court to address George's claim that the Superior Court's finding that "[t]he Lottery Commission had no notice . . . of the fraudulent conduct [by] which Mr. George lost his ticket" is erroneous. (J.A. at 14.) However, this Court notes that, although BeGraff and Paul both testified at trial that Paul had told BeGraff that she had sold the winning ticket to one of two women or a young man that worked for HOVENSA, (J.A. at 31-32; 105-06), this testimony — although sufficient to inform the Lottery that Brito had likely not purchased the ticket — could not, without more, have put the Lottery on notice that Brito had obtained the ticket by defrauding the ticket purchaser.

540

the Director on presentation of the winning ticket and the verification of its legitimacy." Moreover, even if Flemming could have withheld payment to Brito, it is well established that "[t]he burden is on the plaintiff to establish proximate cause between breach and damage and if the loss caused by a breach cannot be isolated from that attributable to other factors, no damages may be awarded." *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 527 (3d Cir. 1978) (citing *Lichter v. Mellon-Stuart Co.*, 305 F.2d 216 (3d Cir. 1962)). As the Superior Court noted in its oral findings, the Lottery would have never been put in the position of making a payment to Brito if it were not for George's decision to rely on Brito's statement that his ticket was only worth $500.00, even though the Lottery's regulations expressly provide that "[i]n making payments of prizes, only those lists of winning numbers shall be authentic which are printed and distributed by the Director, and any other document or notice shall be considered as a private notice without official character." 32-13 V.I. CODE R. § 241-9(a). *See also Struna v. Ohio Lottery Comm.*, No. 03AP-787, 2004 Ohio 5576, ¶ 13 (Ohio Ct. App. 2004) (holding that purchaser of lottery ticket is bound by lottery regulations despite ignorance of regulations and alleged misrepresentation by seller of ticket because purchase of lottery ticket places purchaser on notice of regulations). Consequently, finding no error in the Superior Court's legal or factual findings, we affirm its July 16, 2009 Judgment.[7]

## III. CONCLUSION

George, through purchasing his lottery ticket, agreed to the Lottery's rules and regulations. Since those rules and regulations treat winning lottery tickets as bearer instruments that, in the absence of a lost or stolen prize claim, do not require the Lottery to verify that the individual cashing a ticket is the same individual who purchased the ticket, the Lottery did not commit a breach of contract when it paid the grand prize to Brito. Moreover, because the Lottery's rules and regulations mandate immediate

---

[7] Since George's October 11, 2007 complaint only identified the Lottery and Flemming as defendants, it is not necessary or proper for this Court to determine whether the evidence introduced at trial would have allowed George to recover from Brito or would have entitled George to the $18,000.00 remaining in Brito's checking account. Accordingly, nothing in this opinion should be construed as a holding that George is precluded from seeking money damages from Brito in a subsequent civil action.

payment, the Lottery's payment of the grand prize to Brito in the absence of Flemming's signature did not harm George because the Lottery's rules and regulations would not have authorized Flemming to delay payment to Brito in the absence of a lost or stolen prize claim.[8] Furthermore, since the evidence introduced at trial established that the Lottery was only placed in the position of making a payment to Brito due to George's decision to sell his ticket to Brito, George failed to meet his burden of proving that his damages were the proximate cause of the negligence of the Lottery as opposed to his own choice to sell his ticket to another individual based on "a private notice without official character." Accordingly, we affirm the Superior Court's July 16, 2009 Judgment.

---

[8] Significantly, we note that to hold otherwise would require that the Director withhold payment of all lottery prizes for six months to determine if a lost or stolen claim would be filed pursuant to 32 V.I.C. § 256(b), a requirement which is clearly contrary to the regulations, which mandate prompt payment after the authenticity of the winning ticket has been established.